Robert J. PILKINGTON, Plaintiff, Appellee,

v.

Joseph J. BEVILACQUA et al., Defendants, Appellants.

No. 79–1638.

United States Court of Appeals, First Circuit.

Argued June 2, 1980.

Decided Oct. 23, 1980.

Eileen G. Cooney, Sp. Asst. Atty. Gen., Providence, R. I., with whom Dennis J. Roberts II, Atty. Gen., Providence, R. I., was on brief, for defendants, appellants.

John M. Roney, Providence, R. I., with whom Lynette Labinger, Providence, R. I., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, CAFFREY, District Judge.*

COFFIN, Chief Judge.

This appeal arises out of an award of attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiff–appellee, the unit program manager of the Northern Rhode Island unit of the Institute of Mental Health, brought an action against defendants–appellants, various state officials, under 42 U.S.C. § 1983, alleging that his discharge from employment infringed his rights guaranteed by the First and Fourteenth Amendments. Plaintiff ultimately prevailed when the district court concluded, after trial, that appellee's rights to free speech and procedural due process had been violated. *Pilkington v. Bevilacqua*, 439 F.Supp. 465 (D.R. I.1977). On appeal this court affirmed. *Pilkington v. Bevilacqua*, 590 F.2d 386 (1st Cir. 1979). Appellee then moved for an award of attorney's fees.

The nature of the work done by the attorneys, as revealed in their affidavits, consisted of (1) intensive preparation and discovery between the inception of the litigation in early April, 1977, and the commencement of trial on May 12, 1977; (2) participation in trial during parts of eight days between May 12 and May 23, in which thirteen witnesses were examined and 49 exhibits entered; (3) review of trial notes (in lieu of transcript) and preparation therefrom of an 83 page factual summary to serve as proposed findings of fact and a 21 page memorandum of proposed conclusions of law–this work involving 149 hours.

At a hearing on plaintiff's motion for an award of attorney's fees, counsel for the state officials indicated that their challenges were twofold: to the reasonableness of the time spent in preparing the post–trial memoranda and to the reasonableness of the hourly rate claimed for Attorney Labinger. She had, after her formal law school matriculation, spent two years as law clerk to the trial judge, had joined her law firm in September, 1976, and had practiced seven months prior to the commencement of the present law suit. In her affidavit, she asserted that it was her understanding that the "customary rate" at which her firm had billed for her services from April, 1977, to the date of the affidavit was $75 an hour. Apparently defendants had also questioned the complexity of the legal issues at stake. No further objections were made, no discovery was requested, no testimony was presented or cross–examination of plaintiff's attorneys undertaken.

The district court rendered its decision in an opinion of some length. It first noted that both discovery and examination at trial presented a challenge to plaintiff's attorneys, all witnesses being professional specialists and credibility (or lack thereof) being the key objective. The trial transcript of 850 pages reflected the factual complexity. The legal question was one that had not been settled in this circuit at the time of the trial; plaintiff's brief was "justifiably" lengthy. And the detailed proposed findings of fact were, in the court's opinion, an example of effective advocacy. As for the proper hourly rate to be applied, the court refused to penalize an attorney for youthfulness, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), and felt that Attorney Labinger had brought to this case the competence of a mature lawyer, meriting what had been awarded lead counsel in recent

---

* Of the District of Massachusetts, sitting by designation.

important civil rights class action suits, i. e., $75 an hour for in–court time and $70 for out–of–court time. The court also noted that at the outset success was "far from certain" and allowed a requested incentive award of ten percent. It observed that there was no contention that there had been a duplication of legal services or that some of the services were of a non–legal nature. It voiced its opinion that "at a minimum" there might have been meaningful cross–examination of plaintiff's counsel on each of the criteria set forth in *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977). It awarded $21,403.20 for the services of Attorney Roney and $34,042.35 for those of Attorney Labinger.

■ In the light of the limited issues raised by defendants--appellants, the fact that the record was not developed even as to these, and the wide range of discretion necessarily vouchsafed the trial court in fee . awards, we would ordinarily have no difficulty in affirming. What has given us concern here, however, is the fact that the attorney whose fee is the major focus of challenge so recently held the position of law clerk to the judge making the award.

In such a circumstance a judge must have uppermost in mind the avoidance of creating any impression that former clerks appearing before the court benefit either from inside knowledge or a recent intimacy of association. A rule barring a former clerk from practice in the district court (or judge thereof whom the clerk served) for a year or so might achieve the goal of avoiding the appearance as well as the reality of impropriety. *See* ABA Code of Professional Responsibility, Canon 9; Code of Judicial Conduct for United States Judges, Canon 2. Such a rule, however, going beyond proscribing practice on cases which were pending in the court during the period of the young lawyer's clerkship, might well run the risk of depriving a former clerk of the opportunity to practice, during a critical period, in the area of his or her greatest

interest and proficiency. We believe that the advantages of such a rule predominate at the appellate level. *See* 1st Cir. R. 4.[1] Although we encourage the district courts to consider a published policy of this nature, we are hesitant to prescribe such a mandatory course for the district courts without the benefit of their opinions and perspectives on the problem. This is particularly the case since our inquiry has revealed no such published rule in any of the nation's 90 district courts that have promulgated local rules.

The answer in this case, it seems to us, does not lie in any bright line rule. Rather it resides in heightened sensitivity based on a recognition that the subjective aspects of evaluating the performance of a recent associate may all too easily appear to be influenced by that past relationship, and that opposing attorneys may be chary of frankly making known their concern to the judge. In short, the normal dynamics of the adversary system may not function with full effectiveness. The district judge, therefore, should shoulder the responsibility of ensuring a full and searching review of all elements entering into a proposed fee award of recent former clerks, and, indeed, of any other attorneys as to whom the judge's relationship has been similarly close. This duty may well require the court to prod adverse counsel into exploring all relevant questions, cross–examining the applicant attorney, and even presenting any material evidence, as well as to err on the side of conservatism in setting the actual fee. By the same token, we as a reviewing court, as this case illustrates, will, where the record is not fully developed, not accord our normal deference to the exercise of discretion by the trial court.

■ In the case at bar we discern at least four areas which suggest further scrutiny under a standard of heightened sensitivity. The first is the reasonableness of the 149 hours spent on the post–trial memoranda. The district court, although commending

1. Apparently we share this belief with only two other appellate courts. *See* S.Ct. R. 7; D.C. Cir. R. 4.

the quality of this work, seemed to be partly influenced by the lack of any detailed basis for objection. Having in mind that the court's findings of fact were far less extensive than appellee's proposed findings—well under half—it should review the work done to see whether counsel substantially exceeded the bounds of reasonable effort. Perhaps even more important is inquiry into an issue not raised by appellants: whether some of the work done in compiling the proposed findings of fact was of a nature meriting compensation appropriate for paralegal personnel or in any event less than the maximum hourly rate for out–of–court work. *See King v. Greenblatt, supra,* 560 F.2d at 1027, *quoting Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 717.

A third area for exploration, despite absence of objection below, is whether all of the work performed by appellee's two attorneys, particularly at trial, was nonduplicative. *See id.* Finally, while the state did not make any effort to determine the duration or frequency of what appellee's counsel averred to be the customary rate at which her firm billed her time, it is incumbent on the court to see that some further inquiry is made, particularly since counsel's affidavit candidly states that the rate of $75 an hour had existed only since April of 1977, the time of the inception of this litigation, and that in April, May, and July of 1977 most of counsel's time was spent on this case.

As a final observation, in keeping with the need for a court at all times to maintain an outward appearance as well as actuality of propriety, a court must ask itself, especially when awarding a fee based on an extraordinary rate, whether such a higher rate when awarded to someone with whom the court has recently had a close personal and confidential relationship may not, even if deserved, create the impression of favoritism. If so, the court and the former clerk may both feel that it is necessary that the fee be adjusted to a level that will give no grounds for such suspicions or possible criticism.

We deem ourselves unable to make other than the most arbitrary of judgments in this situation. So also would another district judge be at the disadvantage of not having witnessed the work of counsel at the time of performance. We have no doubt that the district court, now having the benefit of our reflections on this rather rare situation, will faithfully apply the rigorous standard of scrutiny we have set forth.

*Judgment vacated and the case remanded to the district court for further proceedings in accordance with this opinion.*