**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**No. 70–250–M.**

United States District Court, D. Massachusetts.

Oct. 25, 1984.

See also, D.C., 46 B.R. 965; D.C., 46 B.R. 966; D.C., 46 B.R. 974; D.C., 46 B.R. 983, and D.C., 46 B.R. 990.

Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for petitioner.

## MEMORANDUM

*On Petition of Ralph J. Moore, Jr., for Compensation and Reimbursement of Expenses as Special Counsel to the Debtor's Trustees in re Lenfest et al v. Boston and Maine Corporation, Debtor, et al (Civil No. 80–2240–C)*

FRANK J. MURRAY, Senior District Judge.

Petitioner seeks compensation in the amount of $149,550.00 for legal services rendered during the period October 8, 1980 to July 30, 1982, and for paralegal time in the amount of $6,488.75, in an action brought against the Debtor and the United Transportation Union ("UTU") by certain dissident members of UTU. In that action plaintiffs challenged the validity of the Award of Arbitration Board No. 387. The issues that were raised in the case and their resolution are set out in the very full, clear and definitive Memorandum of Chief Judge Andrew A. Caffrey of the United States District Court for this District reported in *Lenfest et al v. Boston and Maine Corporation, Debtor, et al,* 537 F.Supp. 324 (D.Mass.1982). At the conclusion of the trial, Chief Judge Caffrey ruled plaintiffs' evidence inadequate to present a factual issue to the jury, and that defendants had a right to directed verdicts and judgments in their favor. Other clearly

defined rulings made by Chief Judge Caffrey demonstrated the inherent weaknesses of plaintiffs' challenge. No appeal was taken from the judgments entered for defendants.

The Award of Arbitration Board No. 387, the target of the action in *Lenfest*, was rendered in the proceedings in which Petitioner, as special counsel, represented the Debtor and the trustees. Petitioner was hired by the trustees in *Lenfest* because of his familiarity with the arbitration proceedings and his railway labor law background. The claim of invalidity of the Award was based on the federal Railway Labor Act and state contract law, *see id.* at 325, and was made by plaintiffs, who, without protest, had accepted benefits under the Award. The services rendered by Petitioner in *Lenfest* involved efforts directed to (a) filing Debtor's pleadings, (b) opposing plaintiffs' motion for temporary restraining order, (c) preparing and arguing Debtor's motion for summary judgment, (d) preparing for trial, (e) attending jury trial, and (f) preparing post-trial motion for counsel fees.

The petition for compensation is based on Petitioner's claim of 1210.75 hours of services of Petitioner and six attorneys, amounting to $149,550.00, and "paralegal time" of 179 hours at $6,488.75, a total of $156,038.75. The record reflects the total hours billed for each of the seven attorneys, and their usual hourly rates for the years 1980 through 1982 are provided in Petitioner's Attachment to the Memorandum in Support of his Second Petition. Nothing appears in the record of the number of paralegals assigned, the services performed or the hourly rates charged. The average hourly rate of the compensation claimed for Petitioner and the six attorneys based on 1210.75 hours is $123.52.

The amount of time claimed for services rendered in *Lenfest* is troublesome. Petitioner argues that the overriding view of the case is that the "stakes were so high", and that plaintiffs' victory "would have been extremely serious for the railroad". This "worst case" outline gives no consideration whatsoever to the important factor of risk. It is not likely that Petitioner

viewed the plaintiffs' challenge to the Award, based primarily on want of authority of UTU officers to agree to binding arbitration, as a challenge involving serious risk to the Debtor. It is more likely that Petitioner viewed the dissident plaintiffs' claims as stated in the Memorandum presented to Chief Judge Caffrey in opposition to plaintiffs' motion for temporary restraining order: "plaintiffs' claims are demonstrably untenable on the merits. There is no possibility, much less likelihood, that they can prevail on the merits". (Memorandum for Debtor at 8). That is not to say Petitioner's services were not effective. While Petitioner would seem to contend otherwise in the Memorandum in Support of his Second Petition, the court finds that Petitioner was under no time constraints. As the record shows, Petitioner encountered no difficulties before or during trial, and met no surprises from the opposition at trial. Further, after Petitioner was hired as special counsel to represent Debtor in *Lenfest*, Petitioner, one partner and one associate, during 1980 and 1981, spent 1020.5 hours representing Debtor before the Massachusetts Department of Public Utilities (the "DPU") seeking modification of DPU orders to allow Debtor to implement fully within Massachusetts the advantages conferred on Debtor by the Award on the crew-consist issue. Also during 1980 and 1981, Petitioner, one partner and two associates spent 310.75 hours in successful prosecution of an appeal to the Court of Appeals for this Circuit from an adverse decision of the District Court of Massachusetts in a crew dispatchers' dispute, and successfully opposed petition for certiorari to the Supreme Court. In 1980 and 1981, Petitioner, one partner and one associate were working on *Lenfest*. In 1982, Petitioner, three partners and three associates were working on the case. Sixty-three (63) percent of all attorney hours was spent from the first of the year 1982 until the *Lenfest* trial terminated on May 4.

The record reflects no facts which would justify the attendance of three partners at the trial (three partners for six days, two partners for eight days). Itemization of

partner time at the trial totals 169.50 hours and compensation for those hours based on the partners' hourly rates would amount to $23,865.00, which would represent an average daily rate of $2,983.00 for the eight-day trial.

 Under any view of Petitioner's undertaking in *Lenfest*, it is clear that the average daily rate for services in connection with the trial exceeds the highest level of compensation requests encountered in this reorganization. Giving full weight to the degree of responsibility involved in the litigation, the issue to be met, the adequacy of Petitioner's previous preparation in the B & M and UTU arbitration proceedings, the character of the opposition encountered, the weakness of plaintiffs' claims, the low degree of risk to Debtor, the result achieved, and all other pertinent factors, the court is unable to justify compensation of the magnitude requested for legal services. The record is not sufficiently detailed of the claimed paralegal services to permit evaluation of that effort, and compensation for paralegal time cannot be allowed.

 The record demonstrates that the factual and legal work done in 1980 and 1981 could be useful indeed in respect of preparation for trial in 1982. Some new matter might well have been added to the preparation, but the court is not convinced upon all the evidence that there was a reasonable need in 1982 for a team of seven attorneys to bring the litigation in *Lenfest* to a successful conclusion. The proposition remains valid: the amount of time actually expended is not necessarily the amount of time reasonably expended. It is true that the court views the factors of compensation with hindsight, but hindsight is an indispensable element of hearing and review. The record here, with its pluses and minuses, provides a sufficient basis for the trial court to indulge in much more than speculation to reach a conclusion as to whether the efforts expended in *Lenfest* "exceeded the bounds of reasonable effort". *Pilkington v. Bevilacqua*, 632 F.2d 922, 925 (1st Cir.1980). Giving consideration to the entire record and having recourse to experience as a trier of fact, the court determines that the hours claimed for efforts expended in 1982 should be reduced to reflect overstaffing of partners' efforts, possible duplication of effort and unnecessary effort.

There is no persuasive showing in the record or in the argument that there was need for 822.50 hours of effort in 1982 in the preparation for trial, the trial itself and the post-trial matters. The weight of responsibility of representation of the Debtor devolved upon the Petitioner. It is clear from the record that he assumed it, and the hours spent by him during that period, as recorded, are reasonable. In assuming the responsibility of the trial, the central fact of the litigation, it was reasonable that he have assistance but not to the extent set forth in the petition. Much of the required preparation for trial having already been accomplished, the assistance of two attorneys at that stage would have sufficed. Whether the assistants were partners or associates, or a combination of a partner and an associate, their role as assistants at that stage should not command an hourly rate above the associate level. It is the judgment of the court that a fair and reasonable allowance for the services rendered in the *Lenfest* case is $60,000.00.

The Petitioner has not set forth in sufficient detail the expenses in connection with the *Lenfest* litigation to enable the court at this time to make an allowance of a sum to reimburse the Petitioner, but the Petitioner will be permitted time to furnish the court with the required detail.

An order shall enter allowing Petitioner $60,000.00 compensation in the *Lenfest* matter and granting Petitioner leave to furnish required detail of expenses at a time stated therein.