**In re COLUMBUS MORTGAGE AND LOAN CORP. OF RHODE ISLAND, Debtor.**

**Bankruptcy No. 91–10365.**

United States Bankruptcy Court,
D. Rhode Island.

June 11, 1993.

Andrea Corcoran, Edwards & Angell, Providence, RI, for debtor.

John P. Gyorgy, Adler Pollock & Sheehan Inc., Providence, RI, for trustee.

Matthew McGowan, Salter, McGowan, Swartz & Holden, Inc., Providence, RI, for creditors' committee.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, RI, for Rhode Island Dept. of Business Regulation.

Jerome L. Lefkowitz, Lefkowitz, Garfinkel, Champi & DeRienzo, Providence, RI, accountant for debtor.

### DECISION AND ORDER AUTHORIZING INTERIM AND FINAL COMPENSATION, AND INTERIM DISTRIBUTION TO CREDITORS

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

■ Most fee application hearings in large or notorious cases seem to involve central areas of interest about which the determination of the requested compensation is involved, i.e. benefit, complexity, undesirability, etc. *See In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bankr.1st Cir. 1982). One element, however, which is often present, as it certainly is here, but which is seldom addressed or even acknowledged, is that at fee hearings *all* of the professionals are represented *fully* as to their respective applications, while the interest of general or unsecured creditors who will be paying said fees, is, for practical purposes unrepresented. Not only are such creditors essentially unrepresented at fee hearings [1]—but their interest actually becomes adverse to the interest of their own attorney of record.[2] This commonly recurring situation, long overdue for discussion, is like an unwanted orphan being dropped at the doorstep of the court for attention. When this happens, the court is saddled with the independent obligation to: (1) look as closely at the law and the facts of the case, as to the impassioned pleas of professionals in behalf of their fee requests; or (2) in appropriate cases, to appoint special counsel or an independent fee examiner to look after the interests of the Estate. *See In re Roco Corp.*, 64 B.R. 499, 500 (D.R.I.1986) (the appointment of special counsel to represent the interests of creditors vis-a-vis the Trustee's appeal regarding his fee, was approved). In the majority of cases in this jurisdiction, however, the size of the case and shortage of funds in the first place, rules out the option of special counsel or the independent fee examiner, leaving the issue, again, with the Court.

■ In this regard, the cases say that '[t]he bankruptcy judge can and must apply his own expertise *sua sponte*, if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system.' *In re Pettibone Corp.*, 74 B.R. at 300 (citing Lavien, *Fees as Seen from the Bankruptcy Bench*, 89 Com.L.J. 136, 138 [March 1984]). 'Because objections to fees are presented so rarely in bankruptcy, the Court's role in this regard is critical.'

*In re Bank of New England Corp.*, 142 B.R. 584, 588 (D.Mass.1992) (quoting, *In re Pettibone Corp.*, 74 B.R. 293, 300 (Bankr. N.D.Ill.1987)). In addition, "[t]he Court is charged with the responsibility to make an independent determination of the reason-

---

1. More than 14 years of experience in this District under the United States Trustee System demonstrates that the interests of unsecured creditors at fee hearings are not adequately represented by that agency, whose focus seems to vary between: (1) maintaining favorable *cases field* versus *cases closed* statistics; and (2) monitoring and enforcing the payment of its quarterly Chapter 11 fees.

2. A clear example of this problem is the willingness of the attorneys for the Trustee and Creditors Committee to bargain away *at least* $40,211 of their clients' money to the Debtor's attorney and accountant (p. 3, infra), apparently for the sake of reaching an accord among the professionals, when the normal expectation is that they would be unanimously opposed to *any* payment to these applicants.

able necessity of the services and the appropriate charges for said services as they apply not in general terms but to the specific matters before the Court." *In re Erewhon, Inc.*, 21 B.R. 79, 86 (Bankr.D.Mass. 1982); *see also In re Cumberland Farms, Inc.*, 154 B.R. 9 (Bankr.D.Mass.1993).

In this case we have *interim* fee applications in the total amount of $617,114, funds on hand of $306,648, and creditors with claims of approximately Three Million, Eight Hundred Thousand Dollars. The individual applications are as follows:

1) Adler Pollock & Sheehan, counsel for the Trustee, $278,822, plus expenses of $16,358;

2) Ernst & Young, accountant for the Trustee, $61,672;

3) Salter, McGowan, Swartz & Holden, attorney for the Creditors' Committee, $58,871, and expenses of $3,570;

4) William E. Coyle, Jr. & Associates, real estate appraiser, $13,650;

5) Stephen Darr, Trustee, $10,000.

6) Winograd, Shine & Zacks, attorney for the Rhode Island Department of Business Regulation, $32,708, and expenses of $350;

7) Kieliszack, Eggert & Co., accountant for the Creditors' Committee, $16,923, and expenses of $239;

8) Edwards & Angell, attorney for the Debtor, $98,089, and expenses of $8,749;

9) Lefkowitz, Garfinkle, Champi & DeRienzo, accountant for the Debtor, $16,796, and expenses of $317;

TOTAL—$617,114.

The outlook as to further recoveries in this case ranges from "speculative," according to the Trustee, to *guarded* or *mysterious*. In partial recognition of the Court's demonstrated concern with these fee requests that are more than double the size of the Estate, the applicants have collectively proposed the following on account interim fee distribution:

| | |
|---|---:|
| Adler Pollock & Sheehan | $113,600 |
| Ernst & Young | $ 21,922 |
| Salter, McGowan, Swartz & Holden | $ 24,099 |
| Winograd, Shine & Zacks | $ 11,937 |
| Kieliszack, Eggert & Co. | $ 6,228 |
| William E. Coyle, Jr. & Associates | $ 4,852 |
| Edwards & Angell | $ 33,926 |
| Lefkowitz, Garfinkle, Champi & DeRienzo | $ 6,284 |
| Stephen Darr, Trustee | $ 2,092 |
| TOTAL | $224,940 |

(Letters from John P. Gyorgy, Esq. to the Court, dated May 10 and 11, 1993, at 1.)

While this agreed upon distribution by the professionals does not quite consume the entire estate, it comes close (73%), with the result that creditors will receive a dividend of 2%, if the applications are allowed as requested.[3] It is this Court's conclusion that the proposed fees, even as reduced, are excessive, considering, inter alia, the size of the estate, the amount of allowed claims, and the benefit of said services to the estate.

The applicants representing the Trustee and the debenture holders, and who are therefore subject to the closest independent Court scrutiny, are Messrs. Gyorgy and McGowan. Both urge that their time should be fully compensated because, in addition to obtaining judgment against Joseph Muratore in the amount of $2,087,551, it was their efforts which exposed the extent of his wrongdoing in the misuse and manipulation of the Debtor's assets, and in his attempts to stonewall the investigation and the discovery process. They also argue that, in the circumstances, there was no choice other than to proceed exactly as they have. While there is no question that Mr. Gyorgy and Mr. McGowan are among the very skilled practitioners who appear regularly in this Court, it appears that the outcome of the District Court litigation was never much in doubt, given the transparent nature of Mr. Muratore's protracted and blatant pattern of

---

**3.** The proposal, in any event, is not binding because "this Court has a fiduciary duty to review the requested counsel fees and reimbursement and to use its best judgment to determine what is a reasonable fee and what are appropriate disbursements." *Mokover v. Neco Enterprises, Inc.*, 785 F.Supp. 1083, 1086 (D.R.I.1992).

misconduct, vis-a-vis the debenture holders. In the circumstances, the expenditure of more than $335,000 in legal fees to obtain a judgment of such questionable monetary value includes a lot of overkill, with no corresponding financial benefit to the estate. This is evident from the detail in Mr. Gyorgy's application where it is not uncommon to see single time entries and charges in the $700 to $900 range, and higher. The point here is that while applicants should not be required to act in perfect hindsight, they are bound to exercise reasonable judgment when incurring legal fees, as to what can be anticipated in return for those services. It is basic that services performed by professionals should be reasonably cost effective, and we seriously doubt whether these applicants would present such bills to private clients in similar circumstances—much less collect upon them. *See In re Casco Bay Lines, Inc.*, 25 B.R. at 755 (where the court observed that "the hours actually expended by an attorney do not necessarily constitute the hours *reasonably* expended. The court 'should review the work done to see whether counsel substantially exceeded the bounds of reasonable effort.'" *Id.* at 755 (quoting, *Pilkington v. Bevilacqua*, 632 F.2d 922, 925 (1st Cir.1980)) (emphasis in original)).

■ Based upon the foregoing discussion and considerations, and in what we feel, in the circumstances, is an unusually high interim disbursement, 50% of the entire present estate is authorized to be paid toward fees and expenses, on account, as follows:[4]

| | | |
|---|---|---|
| Adler Pollock & Sheehan | $ 80,000 | |
| Stephen Darr | $ 8,000 | |
| Ernest & Young | $ 17,000 | |
| Salter, McGowan, Swartz & Holden | $ 17,000 | |
| Winograd, Shine & Zacks | $ 10,000 | in full[5] |
| Kieliszack, Eggert & Co. | $ 4,000 | in full |
| William E. Coyle, Jr. & Associates | $ 10,000 | in full |
| Edwards & Angell | $ 5,324 | in full |
| Lefkowitz, Garfinkle, Champi & DeRienzo | $ 2,000 | in full |
| TOTAL | $153,324 | |

**4.** Said allowances include compensation on account, and expenses to date in full, unless otherwise indicated.

**5.** This allowance is "in full" from the estate, but the firm of Winograd, Shine & Zacks also has

Also, the Trustee is ORDERED to distribute, forthwith, the remaining $153,324 to creditors, pro rata, according to the order of priority of their claims.

Enter Judgment consistent with this opinion.

the personal guarantee of Joseph Muratore (*see* Settlement Agreement attached to Application to Approve Settlement, at ¶ 8), from whom it may seek the balance of its $33,058 claim.