FASHION HOUSE, INC.

v.

K MART CORPORATION.

Civ. A. No. 86–0191L.

United States District Court, D. Rhode Island.

Sept. 23, 1988.

**17**

Daniel A. Ross, Richard Sharfman, Sharfman, Shanman, Poret & Siviglia, P.C., New York City, for plaintiff.

Robert Steele, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACOB HAGOPIAN, United States Magistrate.

The instant matter has been referred to the United States Magistrate for consideration pursuant to Title 28 U.S.C. Section 636(b)(1)(A). Before the Court is plaintiff's attorneys' application for attorneys' fees and related expenses in the amount of $113,172.72, made pursuant to my Orders dated February 1, 1988, affirmed by Judge Lagueux on March 2, 1988, and my Order of March 28, 1988, also affirmed by Judge Lagueux on June 1, 1988.

*Discussion*

Plaintiff's attorneys' instant applications for attorneys' fees were filed pursuant to two Orders of this Court dated February 1, 1988 and March 28, 1988. On February 1, 1988, I entered an Order wherein I found that defendant's attorneys had intentionally failed to comply with discovery Orders of this Court, and ordered, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), defendant's attorneys to pay plaintiff's attorneys' reasonable expenses, including attorneys fees caused by said noncompliance and its unjustified opposition to plaintiff's motion. On March 28, 1988, I found that defendant's motion of November 24, 1987 for an Order seeking contempt and sanctions for plaintiff's alleged failure to provide proper discovery was made by defendant without basis in fact or law. In light of said finding, I ordered plaintiff to submit a motion and memorandum of law as to whether sanctions under Federal Rule of Civil Procedure 11 should be imposed against defendant's attorneys for the making and prosecution of their contempt motion and accorded defendant an opportunity to submit an opposition thereto.

*I. Plaintiff's Application for Attorneys' Fees Pursuant to the Court Order Dated February 1, 1988.*

Plaintiff's attorneys, in their application for attorneys' fees, urge that as a result of defendant's willful failure to obey the prior Orders of this Court and its unjustified opposition to plaintiff's motion for sanctions, necessitated significant expenditures of money and time by plaintiff's attorneys and the incurring of other expenses in three aspects of the instant action:

(a) because defendant refused to make discovery and provide information as to its purchases of name brands or labels, Fashion House's attorneys were compelled to engage in further discovery of many of K Mart's purchases of brand name and designer label apparel which K Mart had refused to provide;

(b) Fashion House's attorneys were also compelled to take the depositions of K Mart's own buyers and merchandise managers in order to gather information as to K Mart's purchases of brands and labels;

(c) plaintiff was compelled to engage in extensive motion practice.

### A. Expenses Incurred with Third Party Discovery of Defendant's Vendors.

▪ Plaintiff's attorneys, Sharfman, Shanman, Poret and Siviglia (SSPS) assert that beginning in June, 1987, they began attempts to identify some of defendant's vendors of brand name and designer label apparel and to discover, from the same, the dollar volume of their sales of brand name and designer label apparel to K Mart. These attempts consisted of reviewing defendant's records to determine which vendors might have relevant information, ascertaining the location of defendant's vendors, issuing notices and subpoenas for at least 25 of those vendors, conferring with counsel for those vendors as to the scope and timing of discovery, and taking the depositions of personnel of four of those vendors (Bonjour—3 persons; Sigallo—2 persons, Dover—1 person; H.I.S.—1 person). Plaintiff urges that it was compelled to address motions for protective orders from Union Underwear, Amerex of California, and Big Yank. Daniel A. Ross, whose rate is $200.00 per hour, conducted most of the aforesaid activities with the aid of James Landau, as associate of the firm, whose rate is $100.00 per hour.

The time expended by those attorneys, which has also been stipulated to on March 29, 1988 by and between plaintiff and defendant, is as follows:

| | |
|---|---|
| Daniel Ross– | 147.5 hours |
| James Landau– | 15.0 hours |

However, the dollar amount for these hours, which has not been stipulated to, is as follows:

| | | |
|---|---|---|
| Daniel Ross– | 147.5 hours at $200.00 per hour– | $29,500 |
| James Landau– | 15 hours at $100.00 per hour– | $1,500 |
| | Total Attorneys' Fees: | $31,000 |

In addition, the following expenses were incurred:

| | |
|---|---|
| Cost of Serving Subpoenas (Witness Fees, Process Server Fees, Court Fees) | $ 1,215.00 |
| Transcripts of Depositions of Vendors | 2,252.60 |
| Fees of Local Counsel for Out-of-Town Service and Motion Practicce (e.g., Bowling Green, Ky., for Union Underwear, etc.) | 747.86 |
| TOTAL EXPENSES: | $ 4,215.46 |
| TOTAL ATTORNEYS' FEES AND EXPENSES | $35,215.46 |

Defendant's attorneys urge that SSPS's claim for $35,215.46 is non-payable and excessive since said fees and expenses were incurred for depositions taken last summer, and thus are clearly outside the scope of my Order of February 1, 1988. In response to the same, SSPS urges that the work performed in tracking down and taking the depositions of third party vendor/witnesses was a direct consequence of defendant's attorneys' willful refusal to provide the information requested in plaintiff's interrogatories numbered 83–88 (the dollar purchases of brand names and designer labels for the 138 designations stated). Moreover, this Court found that defendant's attorneys intended to visit upon Fashion House the enormous cost of such an undertaking caused by defendant's discovery "stonewalling."

In my Order dated February 1, 1988, I found that defendant's attorneys intention-

ally violated the Orders of this Court and failed to act in good faith or in an honest and legitimate attempt to make discovery. On March 2, 1988, Judge Lagueux affirmed my Order of February 1, and found:

> ... There is no question in my mind that defendant K Mart stonewalled answering interrogatories 83 to 88 on the dollar purchases of brand names and designer labels for the 138 designations stated ... What this case illustrates is that K Mart did not want to do a little work to come up with the answers to those interrogatories. It felt that it had the plaintiff, Fashion House, at an enormous disadvantage because Fashion House couldn't secure this financial information any other way except by a process of the taking of depositions of the vendors themselves, which are located all over the country, an enormous undertaking, which K Mart undoubtedly concluded Fashion House could not financially accomplish ...

Accordingly, I find that SSPS' taking of third party vendor/witnesses depositions was not outside the scope of my Order of February 1, 1988.

■ Defendant's attorneys next urge that SSPS' attempts to obtain $747.86 for local counsel services and responses to protective order motions by third party witnesses is not payable by them since plaintiff's counsel did not prevail in its motion. Defendant's argument is without merit. In June, 1983, the instant parties entered into a buying agency contract (hereinafter "contract") which defined the apparel which plaintiff would acquire on behalf of the defendant. Plaintiff alleges that the contract is a "requirements" contract which obligated the defendant to purchase 85% of its requirements of recognized designer and national brand name fashion through plaintiff. This included certain brand name apparel which defendant allegedly obtained solely through its own efforts. In July, 1986, plaintiff served its first set of interrogatories upon defendant. Interrogatories 83–88 therein sought information for various time periods as to the dollar amount of defendant's purchases of specified labels as to which plaintiff alleged it

was owed a commission pursuant to the contract. As I mentioned, Judge Lagueux affirmed my Order in finding that defendant "stonewalled" answering numbers 83–88. As a result, plaintiff was forced to take depositions of the vendors themselves, several of which defendant sought protective orders. Plaintiff, in opposition thereto, utilized local counsel.

In light of defendant's attorneys' intentional refusal and failure to make discovery, I found it proper for plaintiff to depose the third party vendor/witnesses. Defendant's urgings that plaintiff did not prevail in its sanction motion on issues concerning these deposition witnesses is of no moment. Parties seeking to obtain information by deposition, as here, or otherwise, may do so notwithstanding evidentiary objection that the information sought will be inadmissible at trial. The discovery test is whether the information sought appears to be relevant to the subject matter of the claim or defense or is reasonably calculated to lead to the discovery of admissible evidence. If defendant's attorneys had complied with this Court's discovery orders, it would not have been necessary for plaintiff to initiate and maintain the extensive taking of the above-mentioned depositions.

■ Defendant's attorneys urge that SSPS' claim of $35,215.46 is grossly excessive in that plaintiff deposed only four vendors of at least 25 who were noticed and subpoenaed but seeks reimbursement for the same as to all 25; that SSPS, during the four depositions, covered subjects other than interrogatories 83–88.

I recognize the record as establishing that SSPS seeks reimbursement for costs of serving deposition subpoenas totalling $1,215. However, as urged by defendant's attorneys, I find that plaintiff actually deposed only four vendors at a cost of $57 each. Accordingly, I find the expenses recoverable for costs of serving deposition subpoenas amounts in total to $228, contrary to plaintiff's request for entitlement of $1,215.

■ SSPS also seeks reimbursement for transcripts of depositions of vendors in the amount of $2,252.60. I find said expenses necessary in light of the actions of defendant's attorneys and the documentation provided by SSPS is in support thereof. Accordingly, I find that the amount of $2,252.60 should be awarded to SSPS.

Additionally, I find that SSPS is entitled to expenses claimed as a result of taking said vendor depositions and that the same is within the scope of my Order filed February 1, 1988.

At this juncture I must next examine the hourly rates sought by plaintiff's counsel.

I am bound to follow the "lodestar" method of calculating attorney fees which the United States Court of Appeals for the First Circuit has adopted.

■ The "lodestar" method is determined by multiplying total number of hours reasonably spent by a reasonable hourly rate. A court must first determine the number of hours actually spent and then subtract from that figure hours which are duplicative or excessive. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir.1984). Plaintiff requests (regarding vendor discovery) a total sum of $31,000 regarding attorneys' fees:

| Daniel Ross– | 147.50 hours at $200 per hour– | $29,500. |
| James Landau– | 15 hours at $100 per hour– | $1,500. |

■ I find that the time which has been stipulated to on March 29, 1988 by both sides is not duplicious nor excessive in that plaintiff's attorneys were careful in deleting time from the records that was not related to vendor discovery. However, I cannot grant the hourly wage sought by the plaintiff attorneys. The First Circuit has held that rates claimed must be typical of those charged by other attorneys in the Court's community. *Grendel's Den, supra.* Defendant's attorneys have demonstrated that prevailing rates for partners in Rhode Island law firms are $100 to $150

per hour, and for associates $75 per hour. Attorney Landau is an associate in plaintiff's attorneys' law firm of Sharfman, Shanman, Poret and Siviglia.

I find, in light of the preceding, that the 15 hours expended by Attorney Landau as an associate in SSPS is valued at $75 per hour, totalling $1,125. I find that the 147.5 hours expended by Attorney Ross as a partner in SSPS is valued at $150 per hour, totalling $22,125.00. Accordingly, I find the total award for attorneys' fees and expenses regarding vendor discovery at $23,250.·

| | |
|---|---|
| Total Attorneys' Fees– | $23,250.00 |
| Cost of Serving Subpoenaes (witness fees, process server fees, court fees)– | 228.00 |
| Transcripts of depositions of vendors– | 2,252.60 |
| Fees of local counsel for out-of-town service and motion practice– | 747.86 |
| **TOTAL** | **$26,478.46** |

■ In addition to SSPS's application for attorneys' fees and expenses relating to defendant vendor discovery, SSPS makes a further application for attorneys' fees and expenses incurred in opposing defendant's appeal to Judge Lagueux of my Recommendation dated February 1, 1988. I find that said application should be denied. Defendant certainly has a right to take an appeal to a District Judge from a Magistrate's Report and Recommendation without having the burden of the opposition's expenses for the same.

B. Attorneys' Fees and Expenses Incurred by Plaintiff in Conducting Discovery of Defendant K Mart's Own Buyers and Merchandise Managers (Buyers and MM).

■ Plaintiff's instant application pursuant to the Court Order of February 1, 1988 includes fees and expenses incurred in its conducting discovery on defendant's buyers and MM as a direct consequence of defendant's willful refusal to provide the information requested in plaintiff's interrogatories numbered 83–88.

The claim for the total number of hours spent on buyer discovery has also been stipulated to by both sides and is as follows:

Charles Poret– 44 hours
Daniel Ross– 18.5 hours

| | |
|---|---|
| Transcripts of depositions of Buyers– | $4,248.50 |
| Expenses of Charles Poret to travel to Troy, Michigan to take Buyer depositions commencing on 12/7/87– | 1,413.76 |
| TOTAL EXPENSES | $5,662.26 |

Plaintiff submits that Daniel Ross' time should be charged at $200 per hour and Charles Poret's time at $260 per hour.

In addition, the following expenses were incurred:

Defendant's attorneys urge that the depositions of the buyers and MM dealt with many subjects other than the issue that was decided in favor of plaintiff in the sanction Order. However, again I find upon careful examination that the actual hours spent on buyer and MM discovery was not duplicious nor excessive in that plaintiff's attorneys (Ross and Poret) were careful in deleting time from their records which was not related to the same. However, I cannot award the hourly wage sought by Attorney Ross and Attorney Poret. As discussed above, I find that since both Ross and Poret are partners in the law firm of SSPS, the proper hourly wage for this community is $150. Accordingly, I find the total attorneys' fees to be awarded regarding buyer and MM discovery should be $9,375. In addition, I find the expenses incurred by plaintiff regarding the transcripts of buyer and MM depositions, as requested by plaintiff, should be awarded totalling $4,248.50. However, SSPS has failed to demonstrate in the papers filed the expenses of Attorney Poret in traveling to Michigan for the taking of buyer depositions commencing December 7, 1987. Thus, the expenses sought thereto totalling $1,413.76 should not be awarded. Accordingly, I find the sum of attorneys' fees and expenses incurred as a result of the buyer and MM discovery taken by SSPS should be awarded totalling $13,623.50.

C. Attorneys' Fees and Expenses Incurred by Plaintiff in Engaging in Motion Practice as a Result of Defendant's Refusal to Make Discovery.

■ Lastly, plaintiff's application pursuant to the February 1, 1988 Order includes fees and expenses incurred in its motion practice as a result of defendant's willful refusal to provide the discovery information.

The time spent on this sanction motion has also been stipulated to by both plaintiff and defendant and is as follows:

| Attorney | Hours |
|---|---|
| Richard Sharfman | 7.0 |
| Charles Poret | 48.0 |
| Daniel Ross | 131.0 |
| James Landau | 82.5 |
| Gwenn Mayers | 44.0 |

Again, as discussed above, I cannot award the hourly wage as requested by SSPS. Attorneys Sharfman, Ross and Poret are partners in SSPS whose time will be compensated at $150 per hour. These three partners, according to the breakdown, represent 186 hours, which at $150 per hour, totals $27,900. Attorneys Landau and Mayers are associates at SSPS and represent 126.5 hours, which at $75 per hour, totals $9,487.50. Accordingly, I find that the total award which should be granted to SSPS from defendant's attorneys as a result of the former's motion practice totals $37,387.50. Plaintiff's attorneys SSPS should be awarded a total sum of $77,489.46 pursuant to their application under this Court's Order dated February 1, 1988.

II. *Plaintiff's Motion for an Order Pursuant to Rule 11 Imposing Sanctions to K Mart Corporation and/or Its Counsel.*

On March 28, 1988, I issued an Order denying defendant's November 16, 1987 motion for contempt and sanctions against plaintiff for alleged discovery abuse. De-

fendant's motion was found to be "made without basis in fact or law." Defendant appealed this Order which was subsequently affirmed by Judge Lagueux on June 1, 1988. Plaintiff now moves that Rule 11 sanctions be imposed on defendant for bringing such a frivolous motion.

The pertinent facts are as follows. In the Fall of 1988, plaintiff had discovered cartons of computer reports amidst its pre-November, 1982 records. These were records generated by both plaintiff and defendant. They reflect transactions on which the plaintiff was paid a commission. No commission was paid for those records evidencing purchases made near the date of termination. The discovery of the documents was promptly revealed to defendant, who thereupon reviewed the documents on October 15, 1987 and subsequently had them copied. These documents appeared to be responsive to defendant's Fifth Request for Production, which was responded to in September, 1987.

At this point, defendant took no action regarding the discovery of these documents. The record reveals that only after plaintiff made its motion for sanctions did defendant decide to move for contempt and sanctions against plaintiff. Defendant's motion alleged that the documents should have been produced earlier since they were responsive to discovery requests made prior to the Fifth Request and because the documents were somehow critical to the case.

Plaintiff, in this instant action, urges that the defendant's motion was in violation of Federal Rule of Civil Procedure 11 insofar as that motion was not well grounded in fact, was not warranted by existing law, and was pursued in bad faith; that is, in retaliation to plaintiff's motion for sanctions under Rule 37. Defendant, however, contends that it was justified in bringing the motion for sanctions so as to address the failure of plaintiff to adhere to document requests. Defendant also urges that its motion was not "lacking in plausibility" and thus cannot be the basis for Rule 11 sanctions.

Given the aforementioned, I find that the facts clearly support plaintiff's Rule 11 motion and that defendant's contentions are without merit.

Federal Rule of Civil Procedure 11 reads in part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

In this instant action, it is evident that defendant has violated Rule 11. There is no evidence in the record revealing that the computer documents were deliberately withheld. Instead, I do find that defendant had failed to undertake a diligent inspection of the documents once in its possession. It appears that the documents made available by the plaintiff had been available for defendant's review for six weeks prior to defendant's filing of its contempt motion. This was certainly sufficient time for defendant to review the documents and come to the conclusion that they were not germane to the case, and that their late production could not possibly be grounds for contempt under the Federal Rules. Rather than actually reviewing the documents prior to moving for contempt, defendant's counsel admitted that "not all of the contents have yet been examined." The documents in question were so voluminous that a close scrutiny was not necessary, yet they did deserve more than a mere "cursory inspection." Had the documents been examined with some care, defendant would have realized that they were merely outdated computer records which were never requested prior to defendant's Fifth Request.

Given the aforementioned and my Order of March 28, 1988 finding the filing by the

defendant of its contempt motion to be without basis in fact or in law, I again come to the conclusion that the defendant's motion was lacking plausibility and unwarranted by the circumstances. Likewise, I find it appropriate to issue sanctions against the defendant's attorneys in the form of attorneys' fees. Here again, it is proper that attorneys' fees be determined by the "lodestar" method so as to be consistent with the previous attorneys' fees awarded under Rule 37 in this instant action.

As discussed earlier with regard to the Rule 37 motion, the "lodestar" method is determined by multiplying the total number of hours reasonably spent by a reasonable hourly rate. *Grendel's Den, supra.* Upon careful examination of plaintiff's time records, I find that the actual time spent on preparation for the Rule 11 motion reflects as follows:

| | | |
|---|---|---|
| Daniel Ross | 24.5 | hours |
| Richard Sharfman | 8.0 | hours |
| James Landau | 7.25 | hours |

The prevailing rates for partners in Rhode Island law firms are $100 to $150 per hour, and for associates $75 per hour. For the purposes of this instant action, the plaintiff has submitted that Richard Sharfman should be treated as lead counsel and requests that his services be charged at $125 per hour. I find that the $125 per hour request is reasonable and shall so be granted. However, I cannot grant the $100 per hour request for associates Landau and Ross (it is submitted that Ross be treated as associate counsel); instead, I will adhere to the typical rate charged by associates in the Rhode Island community which is $75 per hour.

I find that Attorney Sharfman's services amount to $1,000; Attorney Ross' services amount to $1,837.50; and Attorney Landau's services amount to $543.75. Accordingly, I find the total award for attorneys' fees regarding the Rule 11 sanctions motion to be $3,381.25. Also to be added are related expenses of $109.50, bringing the total to $3,490.75. Plaintiff's attorneys should therefore be awarded a total of $3,389.75 pursuant to its application under this Court's Order dated March 28, 1988.

Accordingly, plaintiff's attorneys should recover against defendant's attorneys the sum of the following:

| | |
|---|---|
| (1) Vendor depositions– | $26,478.46 |
| (2) Buyers and MM Discovery– | 13,623.50 |
| (3) Sanctions under Rule 37– | 37,387.50 |
| (4) Sanctions under Rule 11– | 3,490.75 |
| | $80,980.21 |

IT IS SO ORDERED.