**Abraham M. MOKOVER as Trustee for Manor Furs Inc. Pension Plan**

v.

**NECO ENTERPRISES, INC., et al.**

**Roger MONDSCHEIN**

v.

**NECO ENTERPRISES, INC., et al.**

**Abraham M. MOKOVER, as Trustee for Manor Furs Inc. Pension Plan, and Roger Mondschein, on behalf of themselves and all others similarly situated**

v.

**NECO ENTERPRISES, INC., David LaRoche, Paul Buff, David Ryan, Bernard Dutra, Richard Hayes and Elliot Cohen.**

**Civ. A. Nos. 89–0505B, 89–0693B and 90–0202B.**

United States District Court, D. Rhode Island.

March 2, 1992.

Jonathan M. Plasse, Goodkind, Labaton & Rudoff, Richard Appleby, Lawrence P. Kolker, Wolf, Haldenstein Adler, Freeman & Herz, New York City, Matthew F. Medeiros, Flanders & Medeiros, Providence, R.I., for plaintiffs.

William M. Kolb, Temkin & Miller, Mark Pogue, S. Michael Levin, Stephen A. Fanning, Thomas H. Quinn, Jr., Edwards & Angell, Barry J. Kusinitz, Corrente, Brill & Kusinitz, Marc DeSisto, Carroll, Kelly & Murphy, Providence, R.I., for defendants.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

This case involves a stockholders' class action and two derivative stockholder actions brought against the directors of Neco Enterprises, Inc. ("NECO"), a Rhode Island corporation. The complaints allege that the Defendant directors breached their fiduciary duty to the corporation and violated Rule 14(a)–9 of the Securities Exchange Act of 1934, which prohibits the issuance of materially false or misleading proxy statements. Defendant David LaRoche is the pivotal person. He was an owner of the properties sold to NECO, and he owned 52% of the stock of NECO. The transactions that gave rise to these suits include the purchase by NECO of all the outstanding stock in Quechee Lakes, Quechee Service Co., Quechee Water Co. ("Quechee companies") and Mark Enterprises Inc. ("Mark Enterprises"); and the sale to Eastern Utilities Association ("EUA") of Newport Enterprise, Inc. ("Newport"), a utility company owned by NECO, in exchange for 530,000 EUA shares in August of 1989. The Plaintiffs alleged that Defendant David LaRoche, chairman of the NECO Board of Directors and Chief Executive Officer of NECO, owned the Quechee companies and indirectly owned Mark Enterprises.

Initially, the Defendant directors approved the purchase by NECO of the Quechee companies and Mark Enterprises but later decided to submit the proposed purchases to the NECO shareholders for ratification. Additionally, the directors sought shareholder approval of the sale of Newport to EUA. They scheduled a Special Stockholders' Meeting for March 1990, the purpose of which was to ratify NECO's purchases of the Quechee companies and Mark Enterprises and to approve NECO's sale of Newport to EUA. Thereafter, on February 14, 1990, NECO issued a proxy statement to its shareholders which solic-

ited ratification at the Special Stockholders' Meeting of NECO's purchase of the Quechee companies and Mark Enterprises as well as shareholder approval of the sale of Newport to EUA.

On September 13, 1989, only one month after the transactions which underlie this action, Plaintiff Abraham Mokover as trustee for Manor Furs Inc. Pension Plan filed a stockholders' derivative complaint in this Court alleging that the individual directors breached their fiduciary duties to NECO by approving the purchase of the Quechee companies and Mark Enterprises. Mokover was represented by three law firms: the law firm of Goodkind, Labaton & Rudoff and the Law Office of Richard Appleby, both having offices in New York City; and the Providence, Rhode Island, firm of Flanders & Medeiros as local counsel whose partners and associates are members of the Bar of this Court.

In December 1989, Plaintiff Roger Mondschein filed a similar stockholder derivative complaint. Mondschein was represented by the firm of Wolf, Haldenstein, Adler, Freeman & Herz, also a New York law firm, and by Flanders & Medeiros as local Rhode Island counsel.

In February 1991, Plaintiffs Mokover and Mondschein filed a consolidated derivative complaint. The consolidated complaint essentially restated the initial complaint and added allegations of Securities Acts violations that had occurred after the filing of the initial complaint relating to the effort to obtain stockholder approval of the readily apparent self dealing. All four law firms undertook the joint representation of the Plaintiffs for the consolidated derivative complaint.

In April 1990, Plaintiffs Mokover and Mondschein filed a class action complaint alleging that the proxy statement disseminated by NECO in connection with NECO's March 1990 Special Stockholders' Meeting was false and misleading in violation of Rule 14(a)–9 of the Securities Exchange Act of 1934. Again all four law firms undertook the joint representation of the Plaintiffs.

On May 8, 1991, this Court consolidated the derivative actions and the class action for discovery and trial purposes. The matter appeared about to go to trial. In June 1991, at the urging of the Court, the parties began their first serious discussion of settlement, and shortly after a meeting in the courthouse, the actions were settled. This settlement came after months of intensive and extensive discovery which involved the depositions of at least fifteen witnesses.

In June 1991, the parties entered into a Stipulation of Settlement. The terms of the settlement provided that a cash contribution of $2,900,000 would be deposited on behalf of Defendants into a settlement fund. The settlement further provided that after deduction of attorneys' fees and expenses, 80% would be distributed to the corporation, and 20% would be distributed to stockholders who had filed claims. The Stipulation of Settlement was approved by this Court at a hearing on October 8, 1991.

Counsel for the Plaintiffs now submit a petition for an award of attorney's fees from the settlement fund. The petition seeks an award of a fixed percentage fee of 25% of the fund produced, or $725,000, as a reasonable award of fees. The petition also seeks reimbursement for claimed expenses of $98,260.16, including expert fees of $18,427.76.

In addition to contending that the requested fee is reasonable based upon fees awarded by other courts, the Plaintiffs contend that a 25% fee is less than fees that would be awarded based on hours of services rendered times hourly rates for those services, the so-called "lodestar" method. Plaintiffs contend that using the lodestar method their attorneys would be entitled to a fee of $802,959.10 for 3708.3 hours of services rendered. According to the Plaintiffs, the lodestar approach would yield a fee for the firm of Goodkind, Labaton & Rudoff of $416,367 for 1867.10 hours of services, more than half of which are charged at that firm's highest rate of $320 per hour; Wolf, Haldenstein, Adler, Freeman & Herz a fee of $181,687 for 877.1 hours of services; Law Offices of Richard

Appleby a fee of $139,750 for 430 hours of services at a rate of $325 per hour; and Flanders & Medeiros a fee of $62,154 for 534.16 hours of services, 59 of which are charged at that firm's highest rate of $250. According to the Plaintiffs, the 25% fee requested is $77,959.10 less than the lodestar fee.

The balance of the expenses claimed after allowance for expert's fees is $79,832.40. This includes the following items:

| | |
|---|---|
| Photocopying | $24,544.99 |
| Document Reproduction | 1,777.57 |
| Travel | 15,149.54 |
| Federal Express | 3,885.42 |
| Facsimile transfer | 2,761.91 |
| The total of these items is | $48,119.53. |

Counsel for NECO filed a memorandum in opposition to the Plaintiffs' application. This memorandum is addressed to the calculation of the lodestar fee only and expresses no opinion as to when a percentage-of-the-fund method of fee determination is appropriate.

Thereafter, counsel for the parties submitted a form of order to the Court which states that "counsel for plaintiffs and NECO engaged in negotiations which resulted in an agreement whereby Plaintiffs' counsel agreed, subject to Court approval, to modify the Petition so as to seek an aggregate award of fees and reimbursement of disbursements equal to $675,000 plus 23.2% of the interest accrued on the Settlement fund from the time that fund is created … until the date this order is entered…."

After the presentation of this order, one of Plaintiffs' counsel filed an affidavit which in part states: "The agreement was conditioned upon the Court's approval of the reduced application; the parties reserved all rights in the event the Proposed Fee Order was not approved, including Plaintiffs' counsels' right to apply for the full amount initially sought in the Fee Application."

■ The foregoing statement is not free from ambiguity. It may mean that if the Plaintiffs' counsel are not satisfied with this Court's determination of the issue they reserve the right to take an appeal. The

same language could also be read to suggest that an agreement among counsel has some preclusive or binding effect upon the Court's determination. If the latter is what is intended, it must be pointed out that this Court has a fiduciary duty to review the requested counsel fees and reimbursement and to use its best judgement to determine what is a reasonable fee and what are appropriate disbursements. *Foley v. City of Lowell*, 948 F.2d 10, 19 (1st Cir.1991); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991). The form of order presented, which requires a finding of the fees awarded as "reasonable," certainly recognizes this obligation.

Because both Plaintiffs and Defendants are in agreement and hold views that are contrary to the conclusions of the Court in this opinion, it is necessary for this Court to set forth in some detail the Court's review of the fee application.

It is well-settled that a "litigant who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). A threshold question to determine a reasonable attorney's fee is whether the lodestar method or percentage-of-the-fund approach is the appropriate method for calculating the fee.

■ This action is a consolidation of two types of actions, a stockholders' class action for damage to the value of stock and a derivative stockholders' action for damage to the corporation itself. The fund created, after payment of expenses, is to be distributed 20% to the stockholders and 80% to the corporation. This case, therefore, presents a classic common fund situation, in which the plaintiffs' attorneys are entitled to a fee from the fund as a whole.

In an early common fund case, *Angoff v. Goldfine*, 270 F.2d 185, 188 (1st Cir.1959), the First Circuit applied neither the lodestar method nor the percentage fee method. Instead, the court stated that awards are to be governed by "the standard of reasonableness with reference to the par-

ticular facts of the case." *Id.* It went on to state:

[t]he following factors are to be carefully considered and weighed in fixing the amounts of compensation to be awarded in cases of this sort. These factors are: the amount recovered for the corporation; the time fairly required to be spent on the case; the skill required and employed on the case with reference to the intricacy, novelty and complexity of issues; the difficulties encountered in unearthing the facts and the skill and resourcefulness of opposing counsel; the prevailing rate of compensation for those with the skill, experience and standing of the attorneys, accountants or others involved; the contingent nature of the fees, with the accompanying risk of wasting hours of work, overhead and expenses (for it is clearly established that compensation is awarded only in the event of success); and the benefits accruing to the public from suits such as this.

*Id.* at 188–89. The adoption of a reasonableness approach in *Angoff,* as opposed to the lodestar method, is largely a matter of historic significance. When *Angoff* was decided in 1959, most attorneys had not yet developed the rather specific time-and-rate method of billing, and the courts, therefore, had not yet adopted the lodestar method, which is based primarily upon time and rate.

■ The First Circuit first adopted the lodestar analysis in *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980). Under the lodestar approach, the court computes a lodestar amount by multiplying the number of hours expended by counsel by a reasonable hourly rate for the attorney's services. The court then adjusts the lodestar amount based upon such factors as the risks undertaken in the particular case and the quality of the attorney's work. *See Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890, 894 (1st Cir.1985).

The growing nationwide trend today is to award a percentage of the recovery in common fund cases. For example, both the Ninth and Tenth Circuits permit a percentage award in common fund cases. *See*

*Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Indeed, the Eleventh Circuit requires that attorney's fees be expressed as a percentage of the recovery in common fund cases. *See Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991). Additionally, the Third Circuit advocates a return to a percentage approach in common fund cases, but recommends determining in advance of trial or settlement the percentage that may be recovered. *See Court Awarded Attorney Fees,* Report of the Third Circuit Task Force, 108 F.R.D. 237, 254–59 (1985). The growing trend in favor of the percentage approach is largely because the percentage-of-the-fund approach encourages early settlement and provides a fair and equitable means of determining attorney's fees. Furthermore, the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured. *See Camden I,* 946 F.2d at 773.

Several of the courts that have adopted the percentage approach have relied in part upon a footnote in a recent Supreme Court decision, *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984). *See Camden I,* 946 F.2d at 773–74; *Brown,* 838 F.2d at 454. In *Blum,* the Supreme Court distinguished between common fund and statutory fee cases. It stated that "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation." 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16. Several courts have interpreted this language to mean that "common fund fee awards should be computed as a fair percentage of the fund." *See Camden I,* 946 F.2d at 774.

On the other hand, there is authority in this Circuit that in class action suits involving statutory fee shifting provisions, the appropriate method to be applied is the lodestar approach. In *Weinberger v.*

*Great Northern Nekoosa Corp.,* the Court of Appeals observed that: "[i]f an alternative method is not expressly dictated by applicable law, we have customarily found it best to calculate fees by means of the time-and-rate method known as the lodestar." 925 F.2d 518, 526 (1st Cir.1991).

Furthermore, the First Circuit has never expressed approval of the percentage-of-the-fund approach. In *Segal v. Gilbert Color System, Inc.,* 746 F.2d 78, 86 (1st Cir.1984), the Court of Appeals considered a district court's refusal to award a percentage fee to counsel for a prevailing plaintiff in an action under a statute that permitted a discretionary award of fees. In affirming the district court determination, the First Circuit observed that a counsel fee "cannot be equated reflexively with a percentage of the dollar recovery." *Id.*

While the First Circuit has never expressly ratified the use of the percentage approach in class action common fund cases, it recently noted in *Weinberger* that:

> We are aware of the tendency exhibited by some courts, particularly in common fund cases, to jettison the lodestar in favor of a 'reasonable percent of the fund' approach.... Because the absence of any true common fund renders the percentage approach inapposite here, we cannot fault the district court's implied premise that the lodestar is the soundest available alternative.

925 F.2d at 526 (citations omitted). This statement is hardly a ringing endorsement of the use of the fixed percentage fee.

■ There are sound and prudential reasons why a percentage approach is appropriate in these circumstances. In litigation of this type, use of the lodestar approach provides no disincentive for throwing as much effort as possible into the fray. The more resources that are used, the higher will be the fee. Rather than encourage the best monetary return for the class, there is the obvious distraction that the faster the meter runs, the more profitable the undertaking will be for counsel. Under the lodestar approach, there is no reason to use the least expensive service. Quite the opposite is true. There are a number of vivid demonstrations of this effect in this very action. In spite of the virtues of a percentage fee approach, the more recent pronouncements of the Court of Appeals for the First Circuit quite clearly suggest that the lodestar method is the preferred method of choice. It is therefore the method which will be applied to this fee application.

■ It is necessary therefore to determine the hours reasonably applied, the reasonable rate of compensation to be allowed, and the amount of reasonable expenses incurred. Though the authorities constantly caution that this type of inquiry should not involve an instant replay of all of the tedious details that arise in extensive and intensive litigation, it is next to impossible to avoid an extended review.

The initial action filed involved three law firms representing Mokover, two in New York and one in Rhode Island. One Rhode Island law firm could well have handled the whole matter with the New York law firms as forwarding counsel. That is the method employed when the initial complaint was filed, according to the form of the complaint filed, which states that New York counsel appeared "Of Counsel." The second action was brought by yet a third New York law firm which engaged the same local Rhode Island counsel. Again, this matter could be handled on a forwarded basis.

Although Plaintiffs urge that there was an allocation of responsibility to prevent duplication, it is clear that each of the law firms expended substantial time to review what the other firms were doing, if only to remain current with the proceeding. *See In re Telesphere International Securities Litigation,* 753 F.Supp. 716, 717 (N.D.Ill. 1990) (noting inevitable duplication of effort when multiple law firms handle class action securities litigation). The expenses include $24,544.99 for photocopying, which if calculated at a high figure of 20 cents a page means that there were 122,724.95 pages of documents copied. Surely part of the purpose of this expenditure as well as $3,885.42 for Federal Express was to keep other counsel informed of what was happening, and certainly other counsel charged

for the time consumed in reading this mountain of paper.

There is no explanation whatsoever why the original Plaintiff was initially represented and continues to be represented by two New York law firms. Perhaps there is a hint of the reason in the assertion of one of the New York attorneys that this litigation was a result of his inspiration in the first place. This same attorney, while pointing out that indeed he charged his usual rate while traveling, did state specifically that he did not charge for contemplating the action while in the "shower." To be precise, in contending that travel time should not be discounted this attorney made the somewhat remarkable statement under oath that:

> The reason is that I used my travel time to prepare for and/review the day's events and proceedings. Often, I use travel time (and did here) to just think about the case. In fact, many of my "brainstorms" have come to me while travelling (if not in the shower or just walking down the street, for which I do not submit a bill), which saves other plodding hours.

There is no recorded charge for "thinking" about the case.

One of the law firms involved submitted a charge in the amount of $316,192. This total was based on 988.10 hours of services by a senior partner who charged at the rate of $320 per hour. The total hours charged by the firm was 1867.10. The senior partner's services represent 53% of the total time charged. The balance was charged at lower rates. It seems unlikely that more than half of the effort involved was required of a senior partner, suggesting that the senior partner might have been doing work of a nature just as well done by less experienced and less expensive personnel.

A review of the time sheets submitted by counsel in support of their fee petition reveals other instances of waste and inefficiency. For example, counsel claim that a total of 235.7 hours (5.89 forty-hour weeks) was required to draft and review pleadings. This time is in addition to time charged for preparation of motions and review and re-search in connection with motions. Such motion preparation is a separate category of charge and amounts to 237 hours (5.93 forty-hour weeks). This extraordinary expenditure of time and effort was applied despite the fact that counsel all claim to be experienced securities litigators, and the complaints allege only two causes of action arising out of the sale and purchase of assets by NECO in the summer of 1989. The substantive allegations of the complaints amount to no more than a few pages each, and the class and derivative action complaints largely mirror one another.

Discovery participation and preparation received the most attention. Collectively, Plaintiffs' counsel applied 1964.83 hours to this activity, the equivalent of 245.6 eight-hour days. The total is a little shy of the number of days that, discounting Saturdays, Sundays and holidays, the usual employee works in a year.

Another area of obvious concern is the 86.5 hours (more than 2 forty-hour work weeks) that one New York associate billed at the rate of $225 per hour preparing jury instructions. Again, the claims involve breach of fiduciary duty on the part of Defendant directors arising from a limited number of transactions, and a violation of Rule 14(a)–9. This case is simply not complex enough to merit this number of hours for preparation of jury instructions.

Counsel charged full rates for travel time claiming they were "brainstorming" as they traveled to depositions. Moreover, multiple Plaintiffs' counsel were present at some of the depositions. For example, on March 2, 1990, one attorney billed 13 hours at $325 per hour for taking Defendant Liberati's deposition, while another attorney billed 16 hours at $285 per hour for taking the same deposition. Additionally, these same attorneys billed 12 hours and 10 hours respectively taking the deposition of Defendant Ryan. Indeed, one firm tasked a paralegal with attending and summarizing the deposition of Defendant LaRoche even though counsel from another firm took the deposition and brought his own

paralegal, who was billed at $100 per hour to assist.

Finally, there are seemingly endless hours billed for "conferences with co-counsel" in a case whose simplicity does not even in the first instance warrant the replication of co-counsel involved. This duplication of effort requires that the number of hours charged be reduced to reflect superfluous and unwarranted effort. This is a task that cannot be accomplished with exact precision. Indeed the records are inadequate to make such a determination with exactitude. The time records furnished are replete with time charges for such matters as "Confer w/co-counsel," "t/c's w/co-counsel," "Research," "Document review," "Review documents and confer with counsel," and "Confer with counsel and firm attys" without a specification of the subject matter considered. Further, when more than a single service was provided, the services are combined, and there is no information concerning what part of the total charge is allocated to each service. Hercules's challenge of cleansing the Augean Stables pales by comparison with the task presented.

"In similar cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." *New York Ass'n For Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983). In fact, the First Circuit has applied an across-the-board reduction method to resolve fee issues that could not be accurately defined in terms of hours of service. *See Ackerly Communications of Massachusetts, Inc. v. City of Somerville,* 901 F.2d 170, 171 (1st Cir.1990); *see also Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980) (en banc). This reflects the policy stated in *Boston & Maine Corp. v. Moore,* 776 F.2d 2, 10 (1st Cir.1985), that district courts not become enmeshed in "meticulous analysis of every detailed facet of professional representation."

Item-by-item consideration is especially futile when such analysis would not accomplish anything because the information necessary to do so has not in the first instance been furnished to the Court. The best that can be done within time constraints and with reasonable effort is an overall reduction in the total hours claimed. Certainly the petitioners should not be permitted to benefit because they have managed to create an impossible situation. After all, it is their burden to establish a reasonable fee. This can be accomplished by reducing the total hours claimed by a percentage. Given the fact that there was unquestionably unnecessary duplication of effort, if only on the basis of the number of law firms involved, and additionally that the vagueness of the entries in time records made it impossible to identify specific duplication, a reduction of 20% based on this Court's experience is minimally required. This may be a paltry and insufficient reduction, but it is clearly justified.

Under the lodestar approach, a court must also review the reasonableness of the requested rate of compensation. "The reasonable hourly rate is usually stated to be 'that prevailing in the community for similar work.'" *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983) (quoting *Copeland,* 641 F.2d at 892); *see Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Moreover, "[w]here it is unreasonable to select a higher priced outside attorney—as for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers—the local rate is the appropriate yardstick." *Maceira,* 698 F.2d at 40.

The fee petition submitted by counsel claims rates for out-of-state counsel in excess of up to $400 per hour. Additionally, one out-of-state paralegal was billed at $100 per hour. There is clear and substantial evidence that the rates of compensation sought by New York counsel are far in excess of rates applied locally. The Rhode Island firm that appeared in this action seeks compensation at the rate of $250 per hour for one partner and $180 per hour for another partner. Both of these partners are, based on this Court's observation of their past performances, thoroughly qualified to have carried on this litigation.

■ There are other Rhode Island attorneys who could have ably handled this securities action. Thus the appropriate rates to apply are the rates that prevail in the District of Rhode Island. One of the affidavits submitted suggests that the Court apply the highest rate of $300 per hour, citing charges of a Providence firm not involved in this litigation. The highest rate sought by the Providence law firm that was actually involved in this action was $250 per hour. This fact establishes the ceiling for charges in this action. The reasonable rate is below the ceiling.

To determine a reasonable fee some courts use the twelve factors delineated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Camden I*, 946 F.2d at 772. The factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and the length of the professional relationship with the client; and 12) awards in similar cases.

Plaintiffs' counsel initially sought fees amounting to 25% of the fund, noting that this figure is below their requested lodestar amount. As has been somewhat clearly demonstrated, the lodestar fee suggested is so far out of proportion to what may properly be considered that it is essentially useless to this calculation, except to establish that the true lodestar is far less than that suggested by Plaintiffs.

Although counsel subjected themselves to some risk due to the contingent nature of their fee agreement with their clients, this textbook case did not involve novel or difficult questions and certainly could have been handled effectively by a single competent Rhode Island practitioner. The simplicity of the action is demonstrated by a number of factors. The original complaint was filed within days of the transactions which were questioned. The real estate purchase and sales in question occurred on August 17, 1989; the purchase of Home Owners stock occurred on August 22, 1989; and the complaint was filed on September 13, 1989, when the ink was hardly dry on the transfer documents. The first recorded time charge by the firm of Goodkind, Labaton & Rudoff is an entry on August 22, 1989, recording a charge of 1.80 hours for "NECO confer Appleby; Review docs." That firm charged for 31.30 hours of services between its original contact and the date of the filing of the complaint. This charge included a mere 4.60 hours for research. On the local scene the firm of Flanders & Medeiros charged a total of 5.05 hours of services prior to the filing of the initial complaint.

Although it is argued that subsequent amendments of the complaint painted a different picture, a review of the amendments establish that this is simply not so. That there was self dealing was unmistakably clear. The transactions achieved widespread notoriety. In fact, published news reports practically wrote the complaint for the Plaintiffs. Among some of the publications that resulted from the transactions were news reports that were printed in the Providence Journal on August 30, and September 2, 7, 1989; the Boston Globe on August 23, 30, and September 2, 1989; and the Wall Street Journal on August 28, 1989. *See* William J. Donavan, *NECO to Offer a Swap of Shares*, Providence Journal, August 30, 1989, at B–01; William J. Donovan, *NECO Signs Agreement for EUA to Buy Newport Electric for $19.4 Million in Stock*, Providence Journal, September 2, 1989, at D–01; *Home Owners Stock at New Low*, Providence Journal, September 7, 1989, at C–02; *Utility Buys Stock from LaRoche*, Boston Globe, August 23, 1989, at 78; *NECO Plans Stock Swap*, Boston Globe, August 30, 1989, at 72; Peter Hayhow, *EUA Completes Newport Deal*, Boston Globe, September 2, 1989, at 24; David Stipp, *NECO Holders Object to Firm Buying Much of its Chief's*

*Personal Portfolio*, Wall St. J., August 28, 1989, § 1, at 5. The self dealing was blatantly and boldly proclaimed to all the world. The subsequent amendments to the complaint resulted from the corporation's efforts to obtain stockholder approval of the self dealing based upon documents forwarded to the stockholders, including the named Plaintiffs. The essential issue in these cases was not one involving application of intricate securities law, but a question of whether the corporation got its moneys worth in transactions with the owner of 52% of its stock. The issues were issues of valuation of real property located in Vermont and Rhode Island, the accuracy of corporate balance sheets and profit and loss statements, and the value of publicly-traded stock apparently at its then market value. This action did not require the efforts of master professional specialists; it required only competent counsel.

The attorneys were not precluded in any substantial way from accepting other employment because of their acceptance of this straight-forward securities case. Nor was the case particularly undesirable.

Counsel settled this case nearly two years after the first complaint was filed and over one year after the class action complaint was filed. The action was ready to proceed to trial. However, the timing of the settlement meant that extensive discovery and trial preparation had been completed. This is a factor which certainly does not support an enhanced award.

█ One of the issues is not what are the plaintiffs' attorneys' usual and customary charges in the locality where they principally practice, but what is a reasonable charged in the locality where the services are rendered. If counsel choose to become involved in litigation in Rhode Island, it is the Rhode Island reasonable fees which obviously should apply. There is evidence that one Rhode Island law firm charges a top rate of $300 per hour. That firm is not engaged in this litigation. However, the Rhode Island firm which is involved as has been pointed out seeks a top rate of $250 per hour for senior partners with lesser experienced partners claiming $165 to $180 per hour. Their claim for associates' services are between $125 to $155 per hour. This range of charges is certainly at the very high point of the range of charges of Rhode Island law firms, and already exceed fees allowed in other cases in this district. In 1988, a reasonable hourly fee for a partner was determined by a Magistrate to be $150. *Fashion House, Inc. v. K Mart Corp.*, 124 F.R.D. 15, 21 (D.R.I.1988). A rate of $95 was deemed appropriate in 1983. *See United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 589 (D.R.I.1983). Associates were awarded $100 per hour in 1989. *See Gray v. Romeo*, 709 F.Supp. 325, 327 (D.R.I.1989); *Mr. D. v. Glocester School Committee*, 711 F.Supp. 66, 69 (D.R.I.1989). It is this Court's clear perception that the current rate for a senior partner's services is in the range of $180 per hour. Associates should appropriately be allowed a maximum compensation of $125 per hour.

█ The fee applications of the Rhode Island and the New York firms also seek an allowance for paralegal services. The Rhode Island firm seeks payment of between $65 and $60 per hour for those services. The request of New York counsel range from $100 per hour to $50 per hour. An allowance of $65 per hour is appropriate except where a lesser sum is sought.

The reasonable fees are:

| Professional | Status | Current Rate | Total Hours | Lodestar Claimed | Rate Allowed | Hours Allowed | Fee Allowed |
|---|---|---|---|---|---|---|---|
| GOODKIND, LABATON & RUDOFF | | | | | | | |
| Plasse, J. | P | $320.00 | 988.10 | 316,192.00 | $180.00 | 790.48 | $142,286.40 |
| Sucharow, L. | P | 330.00 | 20.50 | 6,765.00 | 180.00 | 16.40 | 2,952.00 |
| Komlossy, E. | A | 180.00 | 140.90 | 25,362.00 | 125.00 | 112.72 | 14,090.00 |
| Zilka, D. | A | 195.00 | 55.90 | 10,900.50 | 125.00 | 44.72 | 5,590.00 |
| Eisenberg, F. | A | 180.00 | 6.50 | 1,170.00 | 125.00 | 5.20 | 650.00 |
| Pariselli, A. | PL | 100.00 | 372.60 | 37,260.00 | 65.00 | 298.08 | 19,375.20 |

| Professional | Status | Current Rate | Total Hours | Lodestar Claimed | Rate Allowed | Hours Allowed | Fee Allowed |
|---|---|---|---|---|---|---|---|
| GOODKIND, LABATON & RUDOFF | | | | | | | |
| Clarke, J. | PL | 80.00 | 217.90 | 17,432.00 | 65.00 | 174.32 | 11,330.80 |
| Razack, R. | PL | 60.00 | 18.60 | 1,116.00 | 60.00 | 14.88 | 892.80 |
| McCann, K. | PL | 75.00 | 15.00 | 1,125.00 | 65.00 | 12.00 | 780.00 |
| Haskins, R. | PL | 80.00 | 12.90 | 1,032.00 | 65.00 | 10.32 | 670.80 |
| Rausen, S. | PL | 50.00 | 11.80 | 590.00 | 50.00 | 9.44 | 472.00 |
| Gulio, L. | PL | 75.00 | 2.60 | 195.00 | 65.00 | 2.08 | 135.20 |
| Wycoff, M. | PL | 60.00 | 3.80 | 228.00 | 60.00 | 3.04 | 182.40 |
| TOTAL | | | | | | | $199,407.60 |

| Professional | Status | Total Hours | Current Rate | Lodestar Claimed | Rate Allowed | Hours Allowed | Fee Allowed |
|---|---|---|---|---|---|---|---|
| WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ | | | | | | | |
| Daniel W. Krasner | P | 20.1 | $400 | 8,040.00 | $180.00 | 16.08 | $ 2,894.40 |
| David A.P. Browner | P | 18.7 | 300 | 5,610.00 | 180.00 | 14.96 | 2,692.80 |
| Lawrence P. Kolker | A | 580.4 | 225 | 130,590.00 | 125.00 | 464.32 | 58,040.00 |
| David A. Isaac | A | 22.1 | 150 | 3,315.00 | 125.00 | 17.68 | 2,210.00 |
| Neil L. Zola | A | 167.0 | 130 | 21,710.00 | 100.00 | 133.60 | 13,360.00 |
| Morris A. Mondschein | OC | 34.6 | 275 | 9,515.00 | 180.00 | 27.68 | 4,982.40 |
| PARALEGAL | | | | | | | |
| Jacob Davidson | | 3.0 | 85 | 255.00 | 65.00 | 2.40 | 156.00 |
| TOTAL | | | | | | | $84,335.60 |

P—PARTNER  
A—ASSOCIATE  
PL—PARALEGAL  
OC—OF COUNSEL

| Professional | Status | Current Rate | Total Hours | Lodestar Claimed | Rate Allowed | Hours Allowed | Fee Allowed |
|---|---|---|---|---|---|---|---|
| RICHARD APPLEBY | | | | | | | |
| Appleby, R. | P | $325.00 | 430 | $139,750.00 | $180.00 | 344.00 | $61,920.00 |
| FLANDERS & MEDEIROS, INC. | | | | | | | |
| M.F. Medeiros | P | $250.00 | 59.85 | $ 14,962.50 | $180.00 | 47.88 | $ 8,618.40 |
| J.C. Schreck | P | 180.00 | .70 | 126.00 | 180.00 | .56 | 100.80 |
| R. Karem | P | 165.00 | 9.15 | 1,509.75 | 150.00 | 7.32 | 1,098.00 |
| D.J. Schatz | A | 155.00 | .58 | 89.90 | 125.00 | .46 | 58.00 |
| N.J. McNamara | A | 155.00 | 15.05 | 2,332.75 | 125.00 | 12.04 | 1,505.00 |
| G.M. Domenico | A | 125.00 | 248.55 | 31,068.75 | 100.00 | 198.84 | 19,884.00 |
| A.K. Schaffer | PL | 65.00 | 6.00 | 390.00 | 65.00 | 4.80 | 312.00 |
| A.H. Gordon | PL | 65.00 | 3.63 | 235.95 | 65.00 | 2.90 | 188.76 |
| M.J. D'Albora | PL | 60.00 | 32.25 | 1,935.00 | 60.00 | 25.80 | 1,548.00 |
| J.E. MacDonald | PL | 60.00 | 147.90 | 8,874.00 | 60.00 | 118.32 | 7,099.20 |
| T. Burney | PL | 60.00 | 10.50 | 630.00 | 60.00 | 8.40 | 504.00 |
| TOTAL | | | | | | | $40,916.16 |

P—PARTNER  
A—ASSOCIATE  
PL—PARALEGAL

---

■ Counsel also seek reimbursement of their expenses in the amount of $98,260.16. Charges for fax, telecopy, Federal Express and messenger services indicate a woeful lack of careful planning. Much of this expense must have been for the convenience of counsel to accomplish tasks by not only the fastest method available, but also the most expensive. Much of this expense is obviously the result of New York law firms doing business in Rhode Island, an item of cost which their unwitting clients should not be required to bear. For instance, there are charges for travel from New York to Rhode Island and return. Much of this cost could have been

eliminated had the matter been attended to by a single Rhode Island firm. Four firms involved in the litigation participating actively in parts of it unnecessarily increased the cost of copying and transmitting documents. Consequently, these expenses must be viewed with great care. There is no precise method of determining which expenditures are appropriate and which are not. In fact some of the records of these expenditures are missing, and some of the entries are contained in voluminous documents which also report a firm's expenses for all other matters that were occurring concurrently with the expenses in this matter. This Court should not be required to perform a task of reviewing and accounting for the specific items which apply to this action. Obviously, it is not possible without prodigious effort to allocate copy and transmission cost without reconstructing each and every event that occurred in the course of the litigation. One tempting alternative is to deny these expenses in their entirety. The fact of the matter is that some of the expenses were properly incurred and should be reimbursed. Giving the applicants the benefit of the doubt in circumstances where even the most informed estimate is just that, an estimate, 50% of the claimed expenses for photocopying, document production, travel, Federal Express, and facsimile transfer will be allowed. *See Ackerly Communications,* 901 F.2d at 173 (disallowing claims for excessive photocopying, computer research, and travel costs). Hence, Plaintiffs are awarded reimbursement for expenses in the amount of $74,200.40.

In sum, due to excessive duplication, Plaintiffs' counsels' time charges are reduced by 20%. Moreover, the reasonable rate of compensation for a senior partner's services is no more than $180 per hour; for an associate's services no more than $125 per hour, and for a paralegal's services no more than $65 per hour. Based on this formula, the New York law firm of Goodkind, Labaton & Rudoff is entitled to $199,-407.60. The New York law firm of Wolf, Haldenstein, Adler, Freeman & Herz is entitled to $84,335.60. The Law Office of Richard Appleby is entitled to $61,920.00.

Finally the Rhode Island firm of Flanders & Medeiros, Inc. is entitled to $40,916.16. Plaintiffs are awarded reimbursement for expenses in the amount of $74,200.40.