R.A., by his next friend, Elizabeth MARTINEZ, Plaintiff,

v.

DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, and Jay G. Lindgren, Jr., in his capacity as the Director of the Department of Children, Youth and Families, Defendants.

C.A. No. 97–269L.

United States District Court, D. Rhode Island.

Oct. 9, 1998.

Susan L. Gundersen, RI, Disability Law Center, Inc., Providence, RI, for Plaintiff.

James R. Lee, Attorney General's Office, Kevin J. Aucoin, Department of Children and Their Families Legal Department, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on plaintiff's objection to a Report and Recommendation issued by United States Magistrate Judge Robert W. Lovegreen recommending denial of plaintiff's motion for attorneys' fees. The motion was made by plaintiff following a voluntary settlement of plaintiff's complaint alleging violations of plaintiff's rights under a federal civil rights statute for the disabled and the United States Constitution. Following a de novo review of the issue and for the reasons stated below, this Court adopts in part the Report and Recommendation of the Magistrate Judge and denies plaintiff's motion for attorneys' fees.

## BACKGROUND

The complaint underlying the motion before the Court was voluntarily dismissed by the parties on September 17, 1997. On that same day, plaintiff filed this motion for attorneys' fees. In that complaint, plaintiff alleged that defendants violated plaintiff's rights under the Americans with Disabilities Act ("ADA") and the Due Process Clause of the Fourteenth Amendment. *See* 42 U.S.C. § 12101 et seq.; U.S. Const. amend. XIV. Plaintiff invoked the provisions of 42 U.S.C. § 1983 for the enforcement of his constitutional claims and 42 U.S.C. § 1988(b) for an award of counsel fees.

When the complaint was filed in 1997, plaintiff was an eleven year old boy who had been diagnosed with Post Traumatic Stress Disorder, Major Depression, and Generalized Anxiety Disorder. On December 30, 1995, plaintiff was committed as an inpatient to Emma Pendleton Bradley Hospital ("Bradley"), a psychiatric hospital in Rhode Island. He remained there until March 11, 1996 when he was transferred to the CRAFT program, a short-term residential treatment program operated by Bradley on its grounds. In October 1996, the medical staff at Bradley recommended that plaintiff be placed in a long-term residential treatment facility. On October 28, 1996, plaintiff's mother contacted the Department of Children, Youth and Families ("DCYF") in search of assistance in placing her son in such a program. By December 1996, DCYF determined that plaintiff was eligible for placement services and funding. DCYF discussed placement options in January, but those plans were put on hold when plaintiff's condition regressed. On January 27, 1997, plaintiff was rehospitalized at Bradley for severe behavior problems. Between January 27, 1997 and April 9, 1997, staff at Bradley was forced to restrain plaintiff thirty-six times because of the severity of his behavior, characterized as "out of control" by Dr. Martin Bauermeister, a psychiatrist who evaluated plaintiff for discharge readiness.

In March 1997, the parties met again to discuss placement. In attendance at that meeting were officials from DCYF, staff from Bradley, plaintiff's mother, and plaintiff's counsel. DCYF officials explained that before a placement referral could be finalized, the Providence School Department had to accept the educational portion of the treatment program. DCYF made two referrals to long-term residential treatment programs on April 8, 1997. John O'Riley, a clinical social worker at DCYF with 25 years of experience, explained that the referrals to the Spurwink School and the Blackstone Children's Home were made because he deemed them the most appropriate programs for plaintiff. There were only five residential treatment programs in Rhode Island at the time, and according to O'Riley, the other three were less suitable for plaintiff either because he was too young for their programs or because their programs were designed for children with problems different from plaintiff's particular troubles.

Neither facility to which plaintiff was referred by DCYF had an immediate opening, so plaintiff was placed on a waiting list at each. The parties discussed possible out-of-state placement for plaintiff, but plaintiff's mother expressed some concern over that option, although she did not refuse that possibility altogether. Before plaintiff came off

one of the waiting lists, plaintiff filed an action in this Court on April 25, 1997.

Plaintiff's lawsuit alleged violations of his rights under the Due Process Clause of the Fourteenth Amendment and the Americans with Disabilities Act. He alleged that DCYF's failure to place him promptly in a residential treatment program appropriate to his condition violated federal law. Plaintiff's rationale was that DCYF's inaction violated the ADA's requirement that the state place plaintiff in the most integrated setting possible, namely, a residential treatment facility and not a psychiatric hospital. The suit sought declaratory and injunctive relief.

A short time after the lawsuit was filed, Thomas Bohan, Executive Director of DCYF, met with O'Riley to discuss plaintiff's situation. On May 1, 1997, DCYF made two additional referrals for plaintiff, one to Harmony Hill School and one to the Harbor School located in Massachusetts. Harmony Hill had not been considered by DCYF previously because the agency determined that plaintiff was too young for the program there. After interviewing plaintiff, Harmony Hill accepted him into its program on May 30, 1997. Plaintiff entered the facility on June 13, 1997, the same day that the parties executed a voluntary placement agreement. On September 17, 1997, this Court entered a dismissal stipulation bringing to an end plaintiff's suit. On that same day, plaintiff filed this motion for attorneys' fees of $5,175 and costs of $150. Defendants objected to the motion.

The motion for attorneys' fees was referred to United States Magistrate Judge Robert W. Lovegreen for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 32(c). After a hearing on the motion and a review of the submissions of the parties, Magistrate Judge Lovegreen issued a Report and Recommendation opining that the plaintiff's motion should be dismissed.

Magistrate Judge Lovegreen based his recommended decision on several grounds. First, he determined that the plaintiff failed the factual prong of the applicable legal test for attorneys' fees, the so-called "catalyst" test discussed below. Second, Magistrate Judge Lovegreen determined that plaintiff also failed the second prong of that test which requires an inquiry into the substance of the underlying lawsuit. Finally, Magistrate Judge Lovegreen determined that plaintiff had provided insufficient information regarding the nature and amount of work done on plaintiff's behalf by his attorney. Plaintiff filed an objection to the Report and Recommendation, a hearing was held and the matter was taken under advisement. It is now in order for decision. This Court expressly reserves judgment on the second and third grounds for the Magistrate Judge's recommended decision because adoption of the Report and Recommendation on the ground that plaintiff failed the first, factual element of the "catalyst" test disposes of plaintiff's motion.

## DISCUSSION

### I. Standard of Review

A district court may refer a motion for attorneys' fees to a United States Magistrate Judge for disposition. *See* Fed.R.Civ.P. 54(d)(2)(D). If a timely objection is filed to the Magistrate Judge's determination of the motion, the district court reviews the motion de novo, because the Federal Rules of Civil Procedure require that the motion for attorneys' fees be treated "under Rule 72(b) as if it were a dispositive pretrial matter." *See* Fed.R.Civ.P. 54(d)(2)(D). Determinations made by magistrate judges on dispositive pretrial motions are reviewed de novo by the district court. *See* Fed.R.Civ.P. 72(b).

In making a de novo determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). In reviewing a magistrate judge's recommendations, the district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982);

*Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir.1989); 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2, at 382 (2d ed.1997).

## II. Analysis

 Under both 42 U.S.C. § 1988 and 42 U.S.C. § 12205, a prevailing party may be awarded reasonable attorneys' fees. The United States Supreme Court has explained that a party has prevailed when the resolution of the dispute has materially altered "the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). This test has been further developed by the United States Court of Appeals for the First Circuit. Under the "catalyst" test followed in this circuit, a party may be entitled to an award of attorneys' fees if that party can demonstrate that actions taken by that party in the course of the lawsuit were a catalyst for producing the success enjoyed by that party. *See Paris v. U.S. Dep't of Hous. & Urban Dev.*, 988 F.2d 236, 241 (1st Cir.1993). To demonstrate eligibility for an award of counsel fees, plaintiff must satisfy both prongs of the catalyst test. Plaintiff must demonstrate "(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously." *Guglietti v. Secretary of Health & Human Servs.*, 900 F.2d 397, 401 (1st Cir.1990).

 Thus, the first hurdle that plaintiff must clear is factual. This is where plaintiff fails. Although plaintiff's actions need not be the sole cause of the resolution, plaintiff must demonstrate that to "some measurable, significant degree" his actions were "a competent producing cause" of the result. *Guglietti*, 900 F.2d at 401. The First Circuit has explained that a plaintiff must demonstrate that his or her actions were "a necessary and important factor in achieving the improvements." *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978).

 In the process of examining this matter de novo, this Court has carefully reviewed all of the submissions of both parties, including the legal memoranda and affidavits, as well as the transcript of the hearing before Magistrate Judge Lovegreen. In addition, this Court has reviewed the supplemental affidavits and memoranda submitted by both parties. As a result of this review, this Court concludes that plaintiff has failed to demonstrate the necessary causal connection between his lawsuit and his eventual placement in a long-term residential treatment facility. This deficiency is fatal to plaintiff's motion. Therefore, this Court will dispense with an examination of how plaintiff's motion would fare under the second prong of the catalyst test.

Plaintiff relies on the chronology of his dealings with DCYF to support his assertion that his lawsuit caused his placement, and that but for the lawsuit, he would have been denied the services he sought. Plaintiff requested the assistance of DCYF in October 1996 in securing residence in a long-term treatment facility. DCYF agreed to provide this assistance by making referrals to suitable facilities in the area. By late May 1997, plaintiff achieved his goal and was accepted at the Harmony Hill School. Mere assertion of this chronology is insufficient to support plaintiff's causation argument in light of DCYF's efforts on plaintiff's behalf. Although the sequence of events in the underlying lawsuit is an important factor in this fee dispute, it is "clearly not [a] definitive factor." *Nadeau*, 581 F.2d at 281. Plaintiff has done little to support his motion beyond reciting the timing of these events. This recitation is not enough.

In elevating the importance of plaintiff's own lawsuit in DCYF's decisional process, plaintiff has seriously understated the efforts taken by the agency long before the lawsuit was filed to place plaintiff in a long-term facility. This Court finds that plaintiff's eventual placement at Harmony Hill was the culmination of DCYF's months-long commitment to plaintiff; and that plaintiff's lawsuit was not an "important and necessary" factor in the eventual placement. This conclusion is supported by evidence that establishes DCYF's efforts to place plaintiff in the most suitable program available.

DCYF made a substantial commitment to placing plaintiff in a long-term facility as early as December 1996 when the agency approved funding for the placement. However, records from Bradley indicate that plaintiff experienced behavioral problems severe enough to require physical restraints on several dozen occasions from January through early April 1997. As DCYF has maintained, placement of plaintiff outside of a hospital setting during this period was improbable, and was not in plaintiff's best interests. DCYF's failure to refer plaintiff to a residential program during this period did not constitute unreasonable delay, but was a sound exercise of the agency's professional discretion.

When plaintiff's condition improved by early April, DCYF soon made two referrals to long-term residential treatment programs. Plaintiff was placed on a waiting list at both facilities because both facilities were filled to capacity at that time. These referrals were not made indiscriminately, but were made by considering the strengths of each of the five long-term residential treatment facilities in Rhode Island. These decisions were made by O'Riley, a DCYF social worker with several decades of experience. O'Riley's decision to not refer plaintiff to Harmony Hill, the program in which plaintiff was eventually placed, was based on O'Riley's determination that plaintiff was too young for that program since DCYF generally avoided placing children under the age of eleven in that program. There is no evidence that might support any other conclusion.

This Court will defer to O'Riley's considerable experience in such matters on the question of the suitability of each facility for plaintiff's needs. Plaintiff has produced no evidence that might lead this Court to believe that what O'Riley did was not in plaintiff's best interests. Although plaintiff was placed on waiting lists at both facilities, the record indicates that the parties expected places to open by the late summer of that year.

Plaintiff places great importance on the meeting between Bohan and O'Riley shortly before the referral to Harmony Hill was made. Plaintiff argues that because this referral was made only after the lawsuit was filed, the lawsuit must be considered the causal stimulus of the Harmony Hill referral. However, plaintiff has produced no evidence to support this conclusion, but has merely recited the chronology of these events and asks this Court to infer the rest. DCYF has a plausible explanation for the sequence which is supported by Bohan's affidavit. Bohan explains that while the lawsuit caused him to revisit plaintiff's case with O'Riley, the decision to refer plaintiff to Harmony Hill was made because, in Bohan's analysis of plaintiff's situation, plaintiff was not so ill-suited for Harmony Hill's program that a referral there would be inappropriate.

Plaintiff was placed in a long-term residential treatment program due to the efforts of DCYF's staff in approving funding for the placement and in referring plaintiff to appropriate facilities. Plaintiff's attorney cannot now claim credit for placing a child when DCYF had been working to that end for months. The interposition of a lawsuit filed many months after DCYF agreed to assist plaintiff and several weeks after the agency actually made two suitable referrals did nothing to change the fact that DCYF had taken substantial steps to place plaintiff. Plaintiff has demonstrated no evidence that would allow this Court to find that DCYF was stonewalling plaintiff's request. To the contrary, the evidence indicates strongly that DCYF took action to fulfill the obligation it voluntarily accepted and that the Harmony Hill referral was a result of DCYF's efforts.

Even if the Court should accept plaintiff's assertion that the lawsuit contributed to the placement, it is clear that without the lawsuit, plaintiff would have been placed (by selection from a waiting list) within a short period of time in the most appropriate setting for his needs. The filing of the suit contributed little if anything to the eventual result because all that was gained, at most, was a placement in a less suitable facility a little sooner in time. Therefore, under any view of this case, plaintiff's lawsuit was not an "important and necessary" factor in the final result.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge is

adopted in part and, therefore, the plaintiff's motion for attorneys' fees hereby is denied.

It is so ordered.