OCG MICROELECTRONIC MATERI-
ALS, INC., Swank, Inc., Benjamin
Moore & Co., and Franklin Environ-
mental Service, Inc., Plaintiffs,

v.

WHITE CONSOLIDATED
INDUSTRIES, INC.,
Defendant.

No. Civ.A. 95–450L.

United States District Court,
D. Rhode Island.

April 2, 1999.

Valerie E. Michael, Cranston, RI, for plaintiffs.

Allen P. Rubine, Providence, RI, Dale E. Stephenson, Squire, Sanders & Dempsey, Cleveland, OH, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

In 1995, this suit began with more than a dozen parties, poisoned land and a complex federal statute. It ends today with a sheaf of legal bills and an abacus.

White Consolidated Industries ("WCI") moves to recover attorneys' fees and other expenses from OCG Microelectronic Materials, Inc., Swank, Inc., Benjamin Moore & Co., Franklin Environmental Service, Inc. and Olin Corporation[1] (collectively "plaintiffs"). Plaintiffs and WCI settled their environmental quarrel on April 11, 1996 with a written settlement agreement (the "Agreement"). Unfortunately, plaintiffs tried to repudiate the deal almost immediately. This Court ruled on May 22, 1996 that the Agreement was valid and enforceable and issued an order to that effect on May 30, 1996. Since then, the parties have spent almost three years fighting over legal fees, because a clause in the Agreement requires a breaching party to pay the reasonable legal fees that the opposing party incurred to enforce the compact.

WCI has requested $41,135.04 to cover the legal expenses it actually paid to its Ohio and Rhode Island attorneys. Plaintiffs have made various objections to the bills, although they have offered no evidence to dispute the affidavits and billing records assembled by WCI's lawyers. On October 6, 1998, Magistrate Judge Robert W. Lovegreen recommended that WCI be awarded $20,000. WCI has objected to Judge Lovegreen's Report and Recommendation. Plaintiffs have not.

This Court reviews the issue de novo. It has examined all of WCI's bills and affidavits, and applying the relevant law, it has reduced the totals to make them reasonable as the Agreement required. In the end, it finds that WCI should receive $27,-786.53 for legal fees and expenses.

### I. Background Facts

This matter was commenced as a suit for contribution pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"). WCI was one of several defendants from which plaintiffs sought reimbursement for previously incurred response costs and for future costs in connection with remedial action undertaken in relation to the Western Sand and Gravel Superfund Site located in Burrillville and North Smithfield, Rhode Island.

A trial on the merits was schedule before this Court on April 11, 1996. On that date, counsel for plaintiffs, WCI, American Water Works Company, Inc. ("American Water") and Bristol County Water Company ("Bristol County") met with the Court and advised that the matter was settled. Counsel for plaintiffs executed a dismissal stipulation. However, in the afternoon of that same day, counsel for plaintiffs notified defense counsel that she believed the settlement was invalid because she lacked the necessary authority to settle. Plaintiff's counsel then attempted to renegotiate the terms of the Agreement, but was rebuffed by defense counsel.

On April 26, 1996, defendants delivered the Agreement to plaintiff's counsel along

---

1. Olin Corporation was not an original plaintiff in this case. However, Olin was a party to the Agreement discussed below. This Court's order of May 30, 1996, enforced the Agreement against Olin along with the other four plaintiffs.

with two checks, one from WCI in the amount of $16,000.00 and the other from American Water and Bristol County for $40,000.00 which represented full payment of the settlement amount from those defendants. On April 30, 1996, plaintiffs returned the two checks and defendants responded by filing a Joint Motion to Enforce the Settlement Agreement and for Entry of Stipulation of Dismissal.

On May 22, 1996, this Court granted that Motion. In an Order dated May 30, 1996, this Court held that plaintiffs' attorney had the authority to settle, and furthermore that the Agreement was fully binding and enforceable as of April 11, 1996. No appeal was taken from that Order.

On July 10, 1996, plaintiffs requested that defendants fulfill their obligations under the Agreement by tendering the settlement checks. Defendants responded by stating that plaintiffs, by returning the settlement checks in April 1996, defaulted, repudiated and/or breached the Agreement. Defendants sought attorneys' fees and costs incurred in their attempt to enforce the Agreement. Defendants relied upon Section 13 of the Agreement:

> 13. Costs and Attorneys' Fees. Each Party to the Agreement shall bear its own costs and attorneys' fees incurred in the litigation arising out of the Complaint through the date of dismissal. However, in the event a party to this Agreement defaults, breaches, or repudiates this Agreement or fails to render full and complete performance of this agreement, the other party shall be entitled to recovery of its expenses (including, without limitation, reasonable attorneys' fees) incurred by such other party as a result of any default or breach of this Agreement.

In July 1996, WCI sought attorneys' fees in the amount of $27,933.62 which were incurred during the period April 11 to June 30, 1996 and which were caused by plaintiffs' repudiation of the Agreement.

WCI offered to resolve the dispute by treating the opposing obligations (the $16,000 owed the plaintiffs under the Agreement and the $27,933.62 purportedly owed WCI as attorneys' fees under section 13 of the Agreement) as mutually offsetting. Plaintiffs declined. At some point which is unclear, plaintiffs resolved the attorneys' fee issue with American Water and Bristol County.

On August 13, 1996, WCI filed a Motion to Compel Performance of the Settlement Agreement relating to attorneys' fees. That was referred to Magistrate Judge Lovegreen. He held a hearing on October 28, 1996. On December 10, 1996, he issued a Report and Recommendation proposing that the motion be granted and that the request for attorneys' fees be supplemented. By Order dated January 2, 1997, this Court accepted that recommendation. Consequently, the matter was resubmitted to Magistrate Judge Lovegreen to determine the amount WCI was entitled to receive.

On October 6, 1998, Judge Lovegreen recommended that WCI be awarded $20,000. WCI has objected to Judge Lovegreen's analysis. This Court will hear the issue de novo as commanded by the Federal Rules of Civil Procedure.

WCI has introduced a series of affidavits and a pair of legal bills which it paid to the Cleveland law firm of Squire, Sanders & Dempsey. For a July 25, 1996 bill, WCI paid $27,933.62. For a December 23, 1996 bill, WCI paid $13,201.42. Those bills included charges for the services of local counsel, the Providence law firm of Winograd, Shine & Zacks P.C. A breakdown of those bills is included at Figure 1.

## II. The Legal Standards

### A. Review of the Magistrate Judge

A district court may refer a motion for attorneys' fees to a magistrate judge for disposition. *See* Fed.R.Civ.P. 54(d)(2)(D). If a timely objection is filed to the magis-

trate judge's determination, the district court reviews the matter de novo because the Federal Rules of Civil Procedure require that the motion for attorneys' fees be treated "under Rule 72(b) as if it were a dispositive pretrial matter." *See* Fed. R.Civ.P. 54(d)(2)(D); Fed.R.Civ.P. 72(b). *See also R.A. v. Department of Children, Youth and Families,* 18 F.Supp.2d 157, 159 (D.R.I.1998).

■ In making a de novo determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). In reviewing a magistrate judge's recommendations, the district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

### B. *The Award of Attorneys' Fees*

Rhode Island law controls this case because the right to recovery is premised on a breach of contract. *See Northern Heel Corp. v. Compo Indus., Inc.,* 851 F.2d 456, 475 (1st Cir.1988). Under Rhode Island case law, an award of attorneys' fees should be "consistent with the services rendered, that is to say, which is fair and reasonable." *Palumbo v. United States Rubber Co.,* 102 R.I. 220, 229 A.2d 620, 622 (1967) (punctuation omitted).

> [W]hat is fair and reasonable depends, of course, on the facts and circumstances of each case. We consider the amount in issue, the questions of law involved and whether they are unique or novel, the hours worked and the diligence displayed, the result obtained, and the experience, standing and ability of the attorney who rendered the services.

Each of these factors is important, but no one is controlling.

*Id.* at 622–23 (citations omitted).

■ Therefore, this Court examines the evidence presented by the party claiming the fees, and it considers the *Palumbo* factors to decide whether to accept the claim or reduce it. Where possible, this Court will make concrete findings and reduce the claim by corresponding, precise amounts. However, a reduction can also be achieved by an across-the-board discount rather than a line-byline critique of billing records. In an attorneys' fees dispute based on federal law, then-Chief Judge Francis Boyle noted that such a detailed critique would be a labor equivalent to Hercules cleansing the Augean Stables. *See Mokover v. Neco Enter., Inc.,* 785 F.Supp. 1083, 1090 (D.R.I.1992). This Court agrees with Judge Boyle's view that the First Circuit generally approves of such across-the-board discounts:

> In similar cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. In fact, the First Circuit has applied an across-the-board reduction method to resolve fee issues that could not be accurately defined in terms of hours of service.

*Id.* (citations omitted). The Rhode Island Supreme Court approves as well. In the past, it has made across-the-board reductions of attorneys' fee requests, at times without explaining even briefly how it calculated the reduction. *See, e.g., Gibbons v. Gibbons,* 619 A.2d 432, 434 (R.I.1993) (reducing counsel fees from $86,602 to $35,-000).

### III. *Deciding Reasonable Fees*

As a preliminary matter, this Court recognizes WCI's objections to Judge Lovegreen's Report and Recommendation. Any objection at all would have entitled WCI to de novo review. However, this Court notes the legitimacy of some of WCI's complaints in order to emphasize

the procedure this Court follows in this decision. Judge Lovegreen's analysis of WCI's bills was fundamentally the same as this Court's: Squire, Sanders & Dempsey's bills were unreasonable because its lawyers charged too much and worked too many hours. However, Judge Lovegreen did not directly connect his criticism to his reduction. His Report and Recommendation does not specify how he divined the $20,000 result. Recognizing WCI's objection, this Court will be more calculating.

At the outset, it is clear that plaintiffs are liable to WCI for its reasonable attorneys' fees and expenses in this case. The Agreement was valid, and the Agreement required a breaching party to pay the fees another party spent to enforce the pact. It is axiomatic that this Court will enforce contracts. At the same time, it is important to note that said axiom should have been just as clear to WCI as it was to plaintiffs. WCI's arguments since April 1996 have been based on bedrock doctrines and relatively undisputed facts. This was not a novel issue or even a complex one.

Several of the concerns raised by Judge Lovegreen do not trouble this Court. There was nothing improper with WCI's Cleveland attorneys leading the effort to enforce the Agreement or attending the conferences called by Senior Magistrate Judge Jacob Hagopian to attempt to settle this phase of the dispute. Even though attorneys Dale Stephenson and Gregory Harvey claim a specialty in environmental law, they are not disqualified from handling this contract issue. In fact, Stephenson's role in negotiating the Agreement made him the natural and most-efficient choice to lead the charge in enforcement. WCI operates in Cleveland, and it should be allowed to rely on its retained lawyers to represent it in Rhode Island. Therefore, the travel expenses and Stephenson's lead role were reasonable.

■ Also, this Court rejects several contentions made by plaintiffs in their pleadings. First, WCI can seek repayment for time spent attending and preparing for settlement conferences. There is no evidence that Stephenson unreasonably extended the conferences to milk the fees. Settlement negotiations are a predictable portion of any party's effort to enforce a breached contract, so the defaulting party should certainly be liable for fees in this situation. Second, the clock on legal fees did not stop on May 22, 1996 when this Court found that plaintiffs were bound by the Agreement. WCI is owed legal fees for all its efforts to enforce the Agreement. Collecting the legal fees was a legitimate part of enforcing the Agreement. This Court is dubious about all the hours that WCI's lawyers invested, but plaintiffs offer no sound legal reason to support the view that the clock should have stopped once this Court upheld the Agreement.

That said, this Court finds that there are three issues with WCI's bills that require adjustments.

■ At the most picayune, the Providence and Cleveland firms overspent on copying. This is suggested by the voluminous and repetitive filings made in this Court. WCI's Notice of Appeal From Magistrate Judge's Report and Recommendation appears to have every document in this case attached, and several documents are attached repetitively. This Court appreciates thorough litigants, and WCI's lawyers have been commendably complete and persuasive. However, it is superfluous to attach the magistrate's report that is in the case file and unnecessary to include duplicate copies of several affidavits and the detailed billing records. (*See, e.g.,* the bills in Attachment 1 and Attachment 4, Exhibit B.)

■ More significantly, Stephenson and Harvey bill at unreasonable rates for Rhode Island attorneys. As Judge Boyle noted, the appropriate rates to apply are the rates that prevail in this state. *See Mokover,* 785 F.Supp. at 1090. This Court notes that Stephenson's local counsel, Allen Rubine, is an experienced, talented litigator who charges $225 per hour and

that Rubine's firm charges $95 per hour for associates with Harvey's tenderfoot experience (a first year associate). As a side benefit, equalizing the rates also ensures that the bill will not be inflated by any "environmental expert" premium built into the Cleveland attorneys' rates.

■ And most importantly, both the Providence and Cleveland attorneys spent an unreasonable amount of time on this case. As noted above, this was not a novel or complex case. This Court recognizes that the Agreement's value to WCI was not limited to the $16,000 that it agreed to pay plaintiffs; ending the CERCLA contribution claim was a worthwhile goal. However, the revocation did not warrant a single lawyer billing almost $20,000 as Stephenson did in the July 25, 1996 bill. On top of that, the lawyers combined to bill almost $13,000 more merely to pursue the original $27,000.

Nothing in this case is as egregious as the depositions attended by multiple lawyers and multiple paralegals that offended Judge Boyle in *Mokover. See Mokover*, 785 F.Supp. at 1089–90. Yet, the records are replete with attorneys consulting and reviewing with each other. Too many lawyers spoil the suit. This was a simple contract case that substantially lasted six weeks, and these attorneys churned about more than reasonable even with an out-of-state counsel/local counsel arrangement. Billing records are, by necessity, insufficient to tell exactly what the lawyers did each day, but the simplicity of this case does not justify the endless conferences and consultations. Judge Lovegreen noted pertinent examples in his opinion, including Stephenson preparing over three days for a May 1996 settlement conference where he presented arguments that should have been crystal clear weeks earlier, (*see Report & Recommendation* at 7–8). As additional illustration, the bills report that Stephenson held a series of June 1996 telephone conferences—all after this

Court's ruling on the merits—regarding "developments and strategy" or "status and developments."

Setting an exact percentage for an across-the-board discount requires significant discretion by the judge. This Court makes such a decision only after considering both the arguments in the underlying CERCLA and contract enforcement disputes; the performance by the attorneys in this Court; and the written evidence presented by WCI. The discount will be 25%.

## IV. *Calculating the fees*

This Court recognizes that WCI has paid the $41,145.04 in legal fees, and although that does not create a legal presumption of reasonableness, the actual payment suggests that the total was acceptable in a marketplace. This Court also notes that plaintiffs offered no evidence about the fees. Their pleadings relied on broad arguments for equity rather than competing evidence, case law or complaints about specific line items with the exception of the travel.

This Court need not start from scratch and calculate the value of the legal services. It begins with the bills that Squire, Sanders & Dempsey submitted to WCI, and based on the findings outlined above, it makes three alterations:

- discounting the copying expenses by 40%

- reducing Stephenson's hourly rate to $225 and Harvey's hourly rate to $95

- discounting the hours spent on the case by all of WCI's lawyers by 25%

The resulting calculations are shown in Figure 2 attached. Based on those calculations, this Court finds that reasonable attorneys' fees resulting from the breach of the Agreement were $27,786.53.[2]

---

**2.** This Court notes that this amount is within $200 of the July 25, 1996 bill, the amount that

WCI first demanded from plaintiffs. The similarity is a coincidence.

## CONCLUSION

For the preceding reasons, this Court finds that WCI is entitled to $27,786.53 in attorney's fees from OCG Microelectronic Materials, Inc., Swank, Inc., Benjamin Moore & Co., Franklin Environmental Service, Inc., and Olin Corporation.

WCI offered no evidence of fees incurred after December 1996. Although the attorneys must have billed for time as recently as the hearing before this Court on February 17, 1999, it is telling that WCI offered no evidence of costs—if any were incurred—for the previous 26 months. WCI must bear some responsibility for these oversights and delays, so this Court refuses to grant fees past December 1996, which was more than six months after this Court issued its ruling on the merits. This litigation must end sometime. Here and now is just as good a time as any.

The attorneys' fees are offset by the $16,000 that WCI owes to plaintiffs under the Agreement.

Therefore, the Clerk shall enter judgment for White Consolidated Industries against plaintiffs jointly and severally in the amount of $11,786.53.

It is so Ordered.

Figure 1

| | 25–July–96 | | 23–Dec–96 | |
|---|---|---|---|---|
| Total Legal | $ 24,308.75 | | $ 7,551.25 | |
| Harvey ($105) | | $ 4,698.75 | | $ 131.25 |
| Stephenson ($265) | | $ 19,610.00 | | $ 7,420.00 |
| Local | $ 2,637.49 | | $ 5,110.36 | |
| Telephone | $ 324.38 | | $ 290.65 | |
| Copying | $ 63.90 | | $ 39.96 | |
| Express/Postage | $ 65.10 | | $ 21.70 | |
| Delivery | $ 33.00 | | | |
| Airfare | $ 1,243.00 | | | |
| Other travel | $ 484.50 | | | |
| Online | $ 403.50 | | $ 187.50 | |
| Discount | $ (1,630.00) | | | |
| Totals | $ 27,933.62 | | $ 13,201.42 | |
| Overall Request | $ 41,135.04 | | | |

Figure 2

| | 25–Jul–96 | | 23–Dec–96 | |
|---|---|---|---|---|
| Total Legal | $ 15,675.94 | | $ 4,814.06 | |
| Harvey ($95) | | $ 3,188.44 | | $ 89.06 |
| Stephenson ($225) | | $ 12,487.50 | | $ 4,725.00 |
| Local | $ 1,978.12 | | 3,832.77 | |
| Telephone | $ 324.38 | | $ 290.65 | |
| Copying | $ 38.34 | | $ 23.98 | |
| Express/Postage | $ 65.10 | | $ 21.70 | |
| Delivery | $ 33.00 | | | |
| Airfare | $ 1,243.00 | | | |
| Other travel | $ 484.50 | | | |
| Online | $ 403.50 | | $ 187.50 | |
| Discount | $ (1,630.00) | | | |
| Totals | $ 18,615.88 | | $ 9,170.66 | |

**90**

| | |
|---|---|
| Overall Judgment | $  27,786.53 |
| Difference | $  (13,348.51) |

**Changed lawyer's rates**

| | |
|---|---|
| Stephenson | $225.00 |
| Harvey | $  95.00 |
| Rubine | $225.00 |
| Palmateer | $160.00 |

**Across-the-board discount on time**

| | |
|---|---|
| Legal | 25% |
| Local Counsel | 25% |

**Discounts**

| | |
|---|---|
| Copying | 40% |